### THE ROCKVILLE WATER AND AQUEDUCT COMPANY vs. LOUIS KOELSCH ET AL.

First Judicial District, Hartford, January Term, 1916.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

A public pleasure-resort and picnic-ground is not necessarily a common-law nuisance.

In a suit brought under §§ 5 and 6 of chapter 137 of the Public Acts of 1909, to enjoin the maintenance of such a resort near the shore of a lake or reservoir used for domestic and municipal purposes, upon the ground that its continuance would be likely to pollute the water-supply, the defendant is entitled to "just damages" if it is found that he would be injured, or deprived of any substantial right, by complying with the injunction.

The fact that the defendant established such a resort after notice from the water company that no such enterprise would be permitted on its watershed, is admissible on the question of the amount of damages which should be awarded to him; but such notice cannot

confer legal rights upon the water company in the adjoining lands, nor deprive the defendant of his right to make any lawful use of his property.

Argued January 5th—decided March 15th, 1916.

SUIT to restrain the defendants from occupying and using their premises adjoining Snipsic Lake in the town of Tolland as a public picnic-ground and pleasure-resort, and thereby subjecting to contamination or pollution the waters of the lake which the plaintiff was authorized to use and was using as a water-supply for the city of Rockville and the town of Vernon, brought to and tried by the Superior Court in Tolland County, *Webb, J.;* facts found and judgment rendered awarding an injunction as prayed for, but requiring the plaintiff to pay to the defendants $1,800 as just damages for being deprived by the restraining order of their substantial rights, from which the plaintiff appealed. *No error*.

The plaintiff is a corporation empowered by its charter to furnish water for drinking and household purposes to the inhabitants of the city of Rockville and the town of Vernon, and has for many years drawn its water-supply from the so-called Snipsic Lake. It also owns the right and privilege of maintaining a dam at the outlet to Snipsic Lake at its present height, and thereby flowing lands of one Doyle from whom the defendant Koelsch purchased a tract of land on the eastern shore of the lake comprising about half an acre and bounded westerly by Snipsic Lake. Koelsch bought this land in 1908, many years after the plaintiff's reservoir had been established at its present level, and built a cottage thereon which he generally occupied with his family during a portion of the summer season of each year. At that time there existed on the western shore of the lake an extensive public pleasure-resort and picnic-ground called Thompson's Grove, which

the plaintiff bought and suppressed in 1909, giving notice at the time, through a newspaper published in Rockville, that it would institute proceedings for the removal of any buildings on its watershed which should be found objectionable. In 1912 the plaintiff company, being informed that the defendants were contemplating the establishment upon the premises bought from Doyle of a public pleasure-resort similar in character to Thompson's Grove, gave personal notice to the defendants that no enterprise of that character would be permitted within the plaintiff's flowage area or watershed, to which notice the defendant Koelsch replied that when he got ready he would build. In May, 1913, the defendants established a general public pleasure-resort equipped with devices to attract the general public, including a dance pavilion, music and refreshment rooms, boating facilities, shooting gallery, and other kindred attractions, and after extensive advertising, opened the same to the public on May 30th, and operated it for three days. As many as three hundred and fifty people were, at certain times, in attendance. On June 2d the plaintiff obtained a temporary injunction restraining the defendants from maintaining their public pleasure-resort. No actual pollution of the waters of the reservoir by reason of the maintenance of the defendants' pleasure-resort has been found, but it is found that by reason of the location of the premises sloping toward the reservoir, its waters will be liable to be polluted in case the defendants continue to use their premises as a public pleasure-resort and picnic-ground.

Section 5 of chapter 137 of the Public Acts of 1909 (p. 1062) provides that "whenever any land or building is so used, occupied, or suffered to remain that it is a source of pollution to the water stored in a reservoir used for supplying residents of a city, town, or borough

with water or ice, or to any source of supply to such reservoir, or when such water or ice is liable to pollution in consequence of the use of the same, either the authorities of such town, city, or borough, or the county or town health officer, or the person, firm, or corporation having charge of such reservoir, or the right to procure ice therefrom, may apply for relief to the Superior Court in the county where such reservoir or water is located, and said court may make any order in the premises, temporary or permanent, which, in its judgment, may be necessary to preserve the purity of such water or ice." And § 6 provides that "whenever any order is made by the Superior Court for the abatement of any nuisance to such water or ice, and said court shall find that compliance with said order will damage any person or corporation or deprive him or it of any substantial right, said court may assess just damages in favor of such person or corporation, to be paid by such municipality, person, or corporation, as the court may decree."

Pursuant to this Act, the defendants, in their answer, alleged by way of counterclaim that compliance with the terms of the injunction prayed for would damage them and deprive them of a substantial right, and demanded damages pursuant to the statute. The Superior Court has assessed the sum of $1,800 as just damages in favor of the defendants, and has annexed to the judgment permanently enjoining the defendants from using their premises as a public pleasure-resort or picnic-ground, a direction that the plaintiff company pay said sum to the defendants.

*Charles Phelps*, for the appellant (plaintiff).

*William F. Henney* and *Albert C. Bill*, for the appellees (defendants).

BEACH, J.  Broadly speaking, the plaintiff's claim is that it is entitled to the injunction prayed for without paying damages.  It is said that at the common law, damages are not allowable for the abatement of a nuisance, and, further, that under the Act of 1909 the defendants are not entitled to damages, because any pecuniary damage which they may have suffered in consequence of proceeding with the establishment of this nuisance after general and personal notice of the plaintiff's intention to enjoin its maintenance, is not "just damages" within the meaning of the statute, especially in view of the public obligations of the plaintiff corporation.  It is also said that the plaintiff has a property right in the waters in the reservoir and in having them kept free from pollution, and that this property right is invaded by the acts of the defendants; that the defendants have no riparian proprietorship or other right in the land covered by the waters and reservoir, and that the injunction is a proper exercise of the police power of the State.

We take up first the plaintiff's claim that the defendants' pleasure-resort was a common-law nuisance, for the abatement of which no damages are recoverable.

There was no evidence of any actual contamination of the water, and therefore no finding of nuisance.  It is, however, found that the waters of the reservoir will be liable to become polluted by a continued use of the defendants' premises as a public pleasure-resort; and this is claimed to be a sufficient basis for the conclusion that such use ought to be enjoined without compensation.  It may be doubted whether the finding of liability to pollution establishes the existence of such a real and immediate danger as would, in the absence of statute, be required to justify an injunction against a threatened nuisance.  *Missouri* v. *Illinois & Chicago District*, 180 U. S. 208, 248, 21 Sup. Ct. 331.

Passing that point, it must be conceded that a public pleasure-resort and picnic-ground is not necessarily a common-law nuisance. It may become one, if improperly conducted, but there is no allegation or finding that the defendants' resort was improperly conducted. The sole basis for the claim that the defendants' resort was abatable as a nuisance is found in its proximity to the waters of Snipsic Lake.

So that the true scope and effect of the plaintiff's claim of law is that any kind of a menace to the purity of the waters of its reservoir becomes, by virtue of the danger to the public health, a nuisance, which it has a right to have abated, without the payment of damages.

We think this claim is too broad, and that § 6 of the Act of 1909 was intended to provide for the assessment of damages in cases like this, where the thing complained of as a nuisance, or as dangerous to the public health, would be unobjectionable except for its proximity to a source of water-supply.

The history of this legislation shows that the General Assembly, while giving full protection to sources of water-supply, has always made some provision for possible compensation to the injured landowner, and has never acceded to the plaintiff's broad claim that danger to the public health was of itself a sufficient ground for an injunction without compensation.

The original legislation on this subject was chapter 27 of the Public Acts of 1883 (p. 243), which was limited to cases of actual "injury to the water," and authorized the Superior Court to make any orders necessary to preserve its purity. The Act then provided that "where the law requires compensation to be made," the court should appoint three disinterested freeholders who should determine and award the compensation to be paid before the order was carried into effect. The

General Assembly thus recognized, at the beginning of this legislation, that modern theories of sanitation might require the court to issue injunctions for which compensation was required by law, although the order was necessary to preserve the purity of a public water-supply. In the Revision of 1902 the right to injunctive relief was extended to cases where "such water is liable to pollution" (§ 2599), and the recognition of a possible right to compensation takes the form of a direct grant (§ 2600) of power to "take such lands or rights" as the Superior Court might deem necessary for the purpose of preserving the purity of the water-supply, coupled with the same provision for compensation (§ 2601) as in the Act of 1883.

In 1903 the Act (Public Acts of 1903, Chap. 192, p. 148), which up to that time had been restricted to reservoirs, was extended to any source of supply for such reservoirs, and the powers given to the Superior Court extended to any judge thereof in vacation. By the present Act, ice ponds are protected as well as sources of water-supply, and the Superior Court is given power, when any order is made for the abatement of any nuisance to water or ice, to assess just damages. Sections 2600 and 2601 remain in force, and the result is that there are now two methods of compensating an injured landowner; one under § 2601, by the appointment and award of a committee of freeholders, and the other by the Superior Court. The former applies to cases when an application is made for the taking of lands or rights therein which are deemed necessary for the purity of the water-supply, and is limited to cases where "the law requires compensation to be made." The latter extends to cases where the abatement of a "nuisance to such water or ice," damages the landowner or deprives him of any substantial right, in which case the court "may assess

just damages." We think the phrase "nuisance to such water or ice," aptly describes a condition which is objectionable only, or chiefly, because of its effect, or potential effect, on such water or ice; and that § 6 authorizes the assessment of just damages to a land-owner who is damaged or deprived of a substantial right by the abatement of such a nuisance.

The next question is whether the damages awarded in this case are "just damages," and the plaintiff's claim on that point is that the defendants have no right to compensation because they went into the business after full notice and with the knowledge that the plaintiff would seek an injunction. It is pointed out that one who avails himself of the proximity of the water-supply to establish a new business which would be impossible except for such proximity, and after notice that it will create a nuisance, stands in a very different equitable position from one who has long carried on a lawful business which afterward, in the light of better knowledge of sanitation, comes to be regarded as dangerous to the public health. That is quite true, and it must doubtless have had its effect on the amount of damages awarded in this case.

On the other hand, it cannot be so that the plaintiff, by maintaining a public water-supply and by very properly giving notice of its intention to protect it, can acquire any legal rights in adjoining lands.

If these defendants have been lawfully deprived of the right of carrying on a public pleasure-resort and picnic-ground on their land, it must be because their property has been *pro tanto* taken for a public use, and for that taking they are entitled to just compensation, under the statute.

The plaintiff's property right in having its water-supply kept free from pollution is merely an incident of the public use to which its property is dedicated, and

must be exercised in accordance with the Constitution and the statutes. We are not called upon to determine whether the State might in the exercise of its police power have forbidden the defendants to make any use of the reservoir for boating, for it has not attempted to do so. The question whether the defendants are riparian owners affects only the amount of their just damages, and it is not assigned as error that the damages awarded are excessive, or assessed upon a wrong theory, if assessable at all.

There is no error.

In this opinion the other judges concurred.