GUS J. VARTELAS, EXECUTOR (ESTATE OF JOHN K. VARTELAS) *v.* WATER RESOURCES COMMISSION

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, JS.

Argued June 5—decided July 28, 1959

*Raymond J. Cannon,* assistant attorney general, with whom, on the brief, was *Albert L. Coles,* attorney general, for the appellant (defendant).

*Carl A. Lundgren,* for the appellee (plaintiff).

BALDWIN, J. The defendant, the water resources commission, acting under what is now § 25-3 (c) of the Revision of 1958, established, along the west bank of the Naugatuck River in Ansonia, a line beyond which, in the direction of the river, no structure or encroachment could be placed unless the commission specifically authorized it. The plaintiff was the executor of an estate which included a parcel of land affected by the commission's action. The land is on the north side of Maple Street in Ansonia; it adjoined in part the north side of the westerly end of the bridge which, prior to the flood of August 19, 1955, crossed the river at this point. For more than sixty years, there had been buildings, containing five stores and six dwelling apartments, on this land. On August 19, 1955, the river overflowed its banks and destroyed the buildings and the bridge. A new bridge is in process of construction. When the construction is finished, the land in question will front on the north side of the bridge at its westerly terminus. The line established by the commission leaves only sixty square feet of the property for the erection of any structure apart from one approved by the commission. § 25-3 (c). Proceeding under that statute, the plaintiff appealed to the Court of Common Pleas, claiming that the action of the commission in establishing the line constituted

an unconstitutional taking of the property for a public use without compensation, in violation of article first, § 11, of the Connecticut constitution. The trial court sustained the appeal, and the commission has appealed from the judgment.

The commission claims that the plaintiff has no standing in this appeal to question the constitutionality of its action. It is true that as a general rule one cannot on appeal question the constitutionality of the statute under which he appeals. *Holley* v. *Sunderland,* 110 Conn. 80, 85, 147 A. 300; *National Transportation Co.* v. *Toquet,* 123 Conn. 468, 478, 196 A. 344; *Spector Motor Service, Inc.* v. *Walsh,* 135 Conn. 37, 42 n., 61 A.2d 89. We do not view the plaintiff's appeal as a broad attack on the constitutionality of § 25-3(c) but as a challenge to the validity of the action taken by the commission under that statute. The basic question presented by the appeal is whether the commission has so used the powers conferred upon it by the statute as to deprive the plaintiff of all use of the property under his control and, in effect, to appropriate it to a public use without compensation. Where, on appeal under the provisions of a statute, the validity of the statute as a whole is not attacked but the issue is whether it applies, or properly can apply, in a particular manner to the particular appellant, that issue may be determined. *Spector Motor Service, Inc.* v. *Walsh,* supra. We hold that the mere fact that the plaintiff is appealing under the provisions of the statute governing the establishment of encroachment lines does not deprive him of standing to raise the question of the constitutionality of the establishment of the line on his property.

Section 25-3 (c) was enacted at a special session of the General Assembly in November, 1955, follow-

ing the disastrous floods of August of that year. Nov. 1955 Sup., § N191. Its obvious purpose was to enable the water resources commission to forestall, by stream clearance, channel improvement and other flood control measures, a repetition of the havoc wrought in those floods. The legislation was an exercise of the police power of the state in the interest of the public welfare. 11 Am. Jur. 1022; 56 Am. Jur. 580, § 97; note, 70 A.L.R. 1274, 1275. The police power has limitations in the extent to which it can properly destroy or diminish the value of property. Where those limitations would be exceeded, the power of eminent domain must be used. *Rockville Water & Aqueduct Co.* v. *Koelsch,* 90 Conn. 171, 176, 96 A. 947; *State* v. *Hillman,* 110 Conn. 92, 106, 147 A. 294; *Pennsylvania Coal Co.* v. *Mahon,* 260 U.S. 393, 413, 43 S. Ct. 158, 67 L. Ed. 322.

The police power regulates use of property because uncontrolled use would be harmful to the public interest. Eminent domain, on the other hand, takes private property because it is useful to the public. *Windsor* v. *Whitney,* 95 Conn. 357, 367, 111 A. 354; Freund, Police Power § 511. These propositions are now so generally accepted that they do not require extended citation of authority. Whether the exercise of the one or the other of these great powers of government is required depends upon the circumstances of the particular case. See *Phillips' Appeal,* 113 Conn. 40, 43, 154 A. 238. That the General Assembly recognized the distinction between them is manifest in § 25-3 (c). It not only authorizes the establishment of encroachment lines as a regulatory measure but provides that "[w]henever the commission finds that existing encroachments within lines established or to be established constitute a hazard to life and property in

the event of flood, it is empowered to take land as provided by chapter 835." Chapter 835 of the 1958 Revision sets forth the procedure for taking land for public use by eminent domain. The provision quoted works no illegal discrimination against the plaintiff as he claims. In authorizing the exercise of the police power with respect to situations where there are no existing structures or encroachments within the lines established or to be established, as in the instant case, and the exercise of the power of eminent domain where there are structures or encroachments in existence within the lines established or to be established, the statute creates a classification within the power of the legislature to make. Between the two situations there is a natural and substantial difference germane to the subject and purposes of the legislation. *State* v. *Gordon,* 143 Conn. 698, 706, 125 A.2d 477; *Franklin Furniture Co.* v. *Bridgeport,* 142 Conn. 510, 514, 115 A.2d 435; *Murphy, Inc.* v. *Westport,* 131 Conn. 292, 304, 40 A.2d 177; *Second National Bank* v. *Loftus,* 121 Conn. 454, 460, 185 A. 423; see *Chouinard* v. *Zoning Commission,* 139 Conn. 728, 732, 97 A.2d 562.

There is nothing in the record to support the claim of the plaintiff that he has been unconstitutionally deprived of the use of the property in his control. Section 25-3 (c) contains this language: "Said commission shall establish, by order after a public hearing and in accordance with sound engineering principles, . . . lines beyond which, in the direction of the waterway, no obstruction or encroachment shall be placed . . . unless specifically authorized by the commission." It is apparent from this language that the plaintiff could seek special permission to build a structure extending beyond the encroachment line. Until this remedy has been exhausted, it

cannot be said that the plaintiff has been finally denied the reasonable and proper use of the property affected by the encroachment line. *Florentine* v. *Darien,* 142 Conn. 415, 428, 115 A.2d 328. An exhibit shows that after the present appeal was taken the plaintiff filed an application for permission to build a retail market within the encroachment line. The building proposed was fifty feet square and constructed of cinder blocks on a poured concrete cellar and foundation. The commission denied the application on the ground that the construction would "seriously impair the capacities of the channel and result in increased upstream water stages in time of flood." The matter of the application is nowhere suggested by the pleadings. The amended complaint, filed after the denial of the application, merely repeats the language of the original complaint and makes no mention of the application. Nor is the fact that the plaintiff applied for and was denied permission to build recited in the finding. Although the finding purported to make all exhibits "a part of the record on appeal" and to permit their use in this court without being printed, this did not establish as facts before this court on appeal the information which could be gleaned from the exhibits. Maltbie, Conn. App. Proc. § 319. On the record before us, therefore, we cannot say that the plaintiff has exhausted the remedy available to him under § 25-3 (c). We need not, however, rest our decision on the inadequacy of the record. The commission has, at most, refused its permission for the erection of a particular structure. Whether the plaintiff could build another type of structure—for example, one on piers or cantilevers —which would not impair the capacity of the channel in time of flood is a matter which the commis-

sion was not asked to, and did not, pass upon.

Reasonable regulation of the size and area of buildings and of the type of material used in them and the method of construction has long been recognized as legally proper. *Len-Lew Realty Co.* v. *Falsey,* 141 Conn. 524, 529, 107 A.2d 403; *State ex rel. Rowell* v. *Boyle,* 115 Conn. 406, 411, 162 A. 26; *Young* v. *West Hartford,* 111 Conn. 27, 31, 149 A. 205; *Ingham* v. *Brooks,* 95 Conn. 317, 329, 111 A. 209. In fact, zoning, which has now become widespread, rests upon the reasonable exercise of this police power in the public interest. *Levine* v. *Board of Adjustment,* 125 Conn. 478, 482, 7 A.2d 222. All property is held subject to the police power. *State* v. *Hillman,* 110 Conn. 92, 105, 147 A. 294. The loss of human life and the destruction of property wrought by the floods in August, 1955, justified the legislature in conferring upon the commission broad powers to adopt preventive measures against their repetition. The trial court found that the encroachment lines as established by the commission extend for several miles along the Naugatuck river, accord with sound engineering principles and statutory requirements, and were designed to reduce hazard to life and property in the event of recurring floods. The commission did not abuse its powers in proceeding by way of regulation rather than by way of eminent domain. As to its refusal to allow the plaintiff to construct a cinder-block building on a concrete foundation within the encroachment line, this action was, under the circumstances of this case, justifiable. *Lane* v. *Harbor Commissioners,* 70 Conn. 685, 695, 40 A. 1058; *State* v. *Heller,* 123 Conn. 492, 497, 196 A. 337. It did not necessarily mean that no structure which would serve the plaintiff's purposes and permit the economic utilization of the property in his

control would be allowed. Until it appears that the plaintiff has been finally deprived by the commission of the reasonable and proper use of the property, it cannot be said that there has been an unconstitutional taking of property without just compensation.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendant.

In this opinion the other judges concurred except DALY, C. J., who died after the cause was argued and before the opinion was adopted by the court.