## No. 26931

**City of Boulder, Colorado, a Colorado municipal corporation v. Kahn's, Inc., a Colorado corporation; Robert W. Brown; Frederick S. Kahn, Kenneth A. Kahn; and Parco, Inc.**

(543 P.2d 711)

Decided December 22, 1975.                    Rehearing denied January 12, 1976.

Walter L. Wagenhals, City Attorney, Richard D. Lynton, Assistant, for petitioner-appellee.

Tracy, Thorvilson and Osgood, Russell K. Osgood, for respondents-appellants.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

This action was brought by the City of Boulder under the Public Mall Act of 1970 (section 31-25-401 *et seq.*, C.R.S. 1973) and our eminent domain statute (sections 38-1-101 *et seq.*, C.R.S. 1973). We affirm the summary judgment entered by the trial court.

The Public Mall Act of 1970 states its purposes as follows:
"[T]hat, in certain areas in cities and particularly in retail shopping areas thereof, there is need to separate pedestrian travel from vehicular travel and that such separation is necessary to protect the public safety or other-

wise to serve the public interest and convenience. The general assembly further finds and declares that such objective can, in part, be accomplished by the establishment of pedestrian malls.

(2) The legislative body of a city has the power:

(a) To establish pedestrian malls;

(b) To prohibit, in whole or in part, vehicular traffic on a pedestrian mall;

(c) To retain title to the pedestrian mall or to convey, lease, or transfer the pedestrian mall, in whole or in part, on such terms as it deems advisable, to an improvement district or other body or agency and to deal with it generally in any manner which it deems appropriate so long as it is used for public purposes and in the public interest . . . ."

The Act provides that, once a municipality's legislative body has determined to establish a pedestrian mall, it shall adopt a resolution declaring its intention to do so. The resolution must contain: a general description of the streets and intersections to be affected by the proposed mall; a statement of any prohibition of vehicular traffic and exceptions thereto; a statement of the source of funds to be used to pay claims awarded to abutting property owners; and provisions for a hearing, including the time, place and notice thereof. '

A copy of the resolution must then be mailed by certified mail, not less than sixty days prior to the hearing, to all property owners of record of land abutting the proposed mall. At the hearing the legislative body shall consider presentations by abutting land owners, as well as objections or comments from the public.

The Act also provides: that the legislative body may adopt on first reading an ordinance finally establishing the pedestrian mall not later than 180 days following the adoption of the resolution; and that any person owning or having legal or equitable interest in any real property which might suffer damage by reason of the establishment of the mall shall file a written claim for damages prior to the first reading of the ordinance. The failure to so file a claim shall be deemed a waiver and shall operate as a bar to any subsequent action.

If any claims are not allowed by the legislative body, either the claimant or that body may institute proceedings in court. The proceedings shall be in the nature of eminent domain for the condemnation of real property, under articles 1 to 7 of title 38, C.R.S. 1973. The Act further states that: "[T]he general assembly expressly declares that, to the extent to which the establishment of a pedestrian mall is justifiable as an exercise of the police power for which no compensation is constitutionally required, no damages or compensation shall be allowed in any action." Section 31-25-406, C.R.S. 1973.

Under the Act, Boulder adopted its ordinance No. 4022 on February 18, 1975 establishing a pedestrian mall in the downtown area of Boulder. The mall is to consist of four blocks on Pearl Street and a portion of 13th

Street. The Pearl Street mall is to be from 11th Street to 15th Street, except for the intersections of streets crossing Pearl Street. Vehicular and bicycle traffic is to be prohibited with certain exceptions. Some of these exceptions are for emergency vehicles and vehicles making deliveries prior to 10:00 a.m. and after 4:00 p.m.

The respondents, who are the appellants here,[1] are the owners or tenants of adjoining buildings, which front on the north side of Pearl Street. The west mall of the westernmost of these buildings is adjacent to 14th Street. Aggregate west-east distance of the buildings is 140 feet.

There is a narrow alleyway running north and south throughout the block. The southern portion of the alleyway is adjacent on the east to the easternmost building here involved. The portion of the alley adjacent to that building is only 10 feet wide. The north half of the alleyway is 14.5 feet in width. An east-west alley 20 feet in width proceeds from the narrow alleyway east to 15th Street. On the north of the buildings here involved (except the westernmost building) there is vehicular access from the narrow alleyway.

The respondent Parco, Inc. operates a parking lot in the northeast quarter of the block, a portion of the southwest quarter of such block containing the buildings of the other respondents. There is vehicular access to this parking lot from Spruce Street on the north, 15th Street on the east and, presumably, from the two alleyways previously mentioned. Pearl Street is a half block from the nearest portion of the parking lot. On oral argument counsel for all the respondents-appellants conceded that the respondent Parco, Inc. does not have standing to raise the questions here involved because it is not directly affected, if at all, by the establishment of the Pearl Street pedestrian mall. We agree and, therefore, dismiss the appeal as to Parco, Inc.

The remaining respondents (hereinafter referred to as the respondents) timely filed with Boulder their claims for damages arising from the establishment of the pedestrian mall. Boulder denied the claims for the reason that any damages were non-compensable, *i.e.*, any injuries resulted from a proper exercise of the police power and did not constitute a "taking" in violation of constitutional rights. Boulder brought this action against the respondents, requesting a determination as to whether any property rights of the respondents were being unconstitutionally taken by the city and, if so, for a determination of compensation to be awarded under the eminent domain act. The respondents filed answers. After an evidentiary hearing, the trial court ruled that there were no compensable takings, and it granted summary judgment in favor of Boulder and against

---

[1] John A. Gustafson and Mary E. Gustafson were respondents in the trial court, but they have not appealed the judgment rendered against them.

the respondents.

The argument submitted by the respondents may be distilled: Does the establishment of the Pearl Street pedestrian mall constitute an unconstitutional taking without compensation of the respondents' rights of vehicular access? We agree with the trial court's ruling that it does not.

■ The fact that a municipality may under its police power interfere to a certain extent with access to and from premises does not mean necessarily that such interference constitutes a "taking" for which under Fifth and Fourteenth Amendments to the United States Constitution and under *Colo. Const.* Art. II, Secs. 15 and 25 there must be compensation. Rather, to constitute such a taking there must be an unreasonable or substantial deprivation of access. *Shaklee v. County Commissioners*, 176 Colo. 559, 491 P.2d 1366 (1971); *Thornton v. Colorado Springs*, 173 Colo. 357, 478 P.2d 665 (1970).

## I.

■ It is urged that there is a "taking" in that pedestrians are deprived of the right to approach the establishments involved after alighting from a vehicle on Pearl Street in front of or near the establishments. The trial court was correct in concluding that the mall did not create unreasonable restrictions upon pedestrian access.

## II.

■ Respondents contend that persons have the right to drive by their establishments on Pearl Street and view them while driving by. That argument was negated in *Troiano v. Colorado Department of Highways*, 170 Colo. 484, 463 P.2d 448 (1969).

## III.

■ It is argued that the pedestrian mall will unreasonably and substantially interfere with the delivery services to and from the premises of the respondents. As we view the record, there are two interferences here involved. The first is that vehicular deliveries and pick-ups cannot be made from Pearl Street between the hours of 10:00 a.m. and 4:00 p.m. Secondly, during that 6-hour period a vehicle may not enter the narrow alleyway from Pearl Street nor emerge therefrom onto Pearl Street. Otherwise vehicular deliveries are not restricted by the pedestrian mall. Vehicular deliveries may continue the same as ever except during the 6-hour period. With the exception of the above mentioned restriction on egress an ingress to the narrow alleyway, there are no further restrictions on the alleyways involved. There are no restrictions on vehicular deliveries on 14th Street.

It is to be implied from the trial court's conclusions that delivery services are not going to be unreasonably or substantially restricted by the mall. We agree.

## IV.

■ The respondents have taken the position that the Act is unconstitutional for the reason that it places a burden upon property owners which

is not cast in other eminent domain proceedings. This burden is the necessity of filing a claim after a municipality has adopted a mall resolution. They point out that in other eminent domain proceedings, it is not necessary for the landowner to initiate anything, but rather the initiation process is commenced by the prospective comdemnor; and, here, the initiation is by the prospective condemnee.

It is true that the procedure involved is different in its commencement than the usual condemnation suit. Difference in this procedure, however, does not reach a constitutional height. Nothing has been brought to our attention disclosing that either the United States or Colorado constitution proscribes the procedure prescribed by the Act here in question.

Respondents have questioned constitutionality in other respects, but have cited no convincing authority in support of their arguments and we find no merit in them.

Judgment affirmed.