[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this matter the plaintiff appeals from a decision of the Zoning Board of Appeals for the Town of Andover (hereinafter ZBA). Mr. Vinci had appealed to the ZBA from a decision of the Andover Building Official/Zoning Agent, (hereinafter Building Inspector), denying Vinci building permits to construct three apartment buildings with four living units in each building on a piece of property owned by the plaintiff.
The plaintiff is the owner of the property in question and was the applicant to the ZBA. As such, the Court finds he is aggrieved by the defendant's decision.
FACTUAL BACKGROUND
In 1968, the property in question was owned by one William Boles and it was part of a larger tract of land owned by said Boles. In 1968 Boles applied to the Andover Planning and Zoning Commission to subdivide the entire tract into two single family residence parcels and one additional building lot. As part of his proposal to develop the entire tract, Boles also requested that the portion of the property now in question be re-zoned from its R-40 designation to a "Garden Apartment District" zone. A Garden Apartment District was, in 1968, a legally existing zone within the Town of Andover. Boles also at that time submitted plans for the proposed construction of the three apartment buildings of four units each. (Exhibit 6).
Section 5.8 of the Andover Zoning Regulations provided for the permitted uses in a Garden Apartment District and also set forth the various requirements for that zone. (Exhibit 21). Those requirements included parking, drainage, sewers, lot sizes, grading, etc.
Mr. Boles presented his proposed apartment project to CT Page 5819 the Planning and Zoning Commission on May 13, 1968 (Exhibit 25), and a public hearing, as required by the zoning regulations, was held on June 10, 1968. The Planning and Zoning Commission approved the application to change the property in question from R-40 to Garden Apartment District, as shown on the map included with the complete plans submitted by Mr. Boles. (Exhibit 11).
Thereafter, on June 24, 1968, the Planning and Zoning Commission voted to approve the total subdivision plan, which included the three residential lots, (lots 1, 2 and 3, Exhibit 6) and the Garden Apartment District. The Commission, also on June 24, 1968, approved an addendum to the subdivision plan. (Exhibit 12). The addendum was not filed and has since been lost, but the minutes of the Planning and Zoning Commission meeting refer to an "addendum effective against both the Garden Apartment plan and the subdivision plan setting forth essentially those facts as brought out heretofore in the minutes." The subdivision plan as modified by the now missing addendum, was then approved.
The individual residential lost (lots 1, 2 and 3) were apparently developed by the end of 1969. No development at all has occurred on the remaining property — the Garden Apartment District, (approximately 5.6 acres in size).
In October 1986 the plaintiff, Scott R. Vinci, acquired the 5.6 acre Garden Apartment tract. When he tried to obtain the necessary building permits from the Building Inspector, he was refused on several grounds: that the necessary work was not completed as required by statute; that current zoning regulations no longer allow a Garden Apartment District and lack of sewer system approval. (Exhibit 3). Mr. Vinci appealed to the ZBA, which held a public hearing on August 16, 1989. On September 20, 1989, the ZBA denied Vinci's appeal, for the following reasons:
 1) The opinion of town counsel that road work and other work required as part of the subdivision approval had not been completed within the required five year period, and therefore expired in 1973.
 2) The garden apartment zone was eliminated in 1983.
 3) The general health, safety and welfare in light of the concerns raised at the public hearing concerning the wetness of the property and it's ability to support multiple family dwellings. CT Page 5820
 4) Mr. Vinci purchased the property in question after the date when the Garden Apartments Zone was eliminated.
The plaintiff thereafter filed the instant matter in the Superior Court.
I. Applicability of Conn. Gen. Stat. Sec. 8-26c
In 1968, when the Planning and Zoning Commission approved the subdivision, Sec. 8-26c of the Conn. Gen. Stat. entitled "Subdivision to be completed within five years of approval of plan", provided as follows:
 Any person, firm or corporation making any subdivision of land shall complete all work in connection with such subdivision within five years after the approval of the plan for such subdivision.
The 1968 subdivision approval was granted as outlined in Mr. Bole's subdivision plan, which was then filed with the Andover Town Clerk (See Exhibit 6). There was an addendum, (the details of which are undetermined or uncertain, since it has been lost) which was also approved. The provisions of that addendum are not, however, necessary to a determination of the applicability of Conn. Gen. Stat. Sec. 8-26c. The plan which was approved and filed indicates three septic tanks with two leaching fields to service the proposed apartments, a drainage culvert, a well and a paved entrance drive from Shoddy Mill Road (upon which the property fronts) to the parking areas. Some sixteen years after the approval was granted and when the plaintiff requested a building permit, no work whatsoever had been done to or in connection with the Garden Apartment District. The plaintiff contends there is no reasonable basis in the record for finding that the paved entrance drive should be considered a public improvement as connoted by the term "work" in Sec. 8-26c. Even if, for the sake of argument, one accepts that premise, the fact remains that Sec. 8-26c mandated that all work be completed within five years of approval.
In 1977, Sec. 8-26c was amended by P.A. 77-545. That amendment defined the term "work" to include all physical improvements required by the approved plan, other than the staking out of lots, and includes, but is not limited to the construction of roads, storm drainage facilities and water and sewer lines, the setting aside of open space and recreation areas, installation of telephone and electric services, planting of trees or other landscaping and installation of retaining walls or other structures." CT Page 5821
 A community sewerage system is defined as "any sewerage system serving one or more residences in separate structures which is not connected to a municipal sewerage system -". Conn. Gen. Stat. Sec. 7-245.
None of the items included as "work" in P.A. 77-545 was ever commenced on this tract, let alone completed. It is instructive, also, to consider the public policy purpose of Sec. 8-26c. That policy may be gleaned from the comments of one of the bill's sponsors, Representative Lavery, who stated that the bill would "stop subdivisions that were approved in 1916 and 17 and still have not been completed as of this date [from] holding up the progress of town planning." Conn. Gen. Assy. House Proceedings, V. 12 PT. 10, at 4508 (June 5, 1967). The term "work" while not statutorily defined until the 1977 Amendment, was always intended to include improvements such as roads and sewers as required by the town and approved by the Zoning Commission, according to Representative Lavery, Id. at 4508-09.
The Court concludes that the subdivision plan as approved, required that the paved entrance drive, sanitary sewage, parking areas and surface drainage were "work" that should have been done or completed by June 1973. The fact that the details of the entrance roadway may be unclear at this time does not bear on this decision. The fact is there was non-compliance with Sec. 8-26c.
In 1977, Sec. 8-26c was amended to provide for the automatic expiration of the approval of a subdivision plan if the work was not completed within five years, but it required the expiration date be shown on the subdivision plan, with notice to be given to the town clerk of such an expiration. (P.A. 77-545). Although Sec. 8-26c as it existed in 1968 did not contain an automatic expiration clause, it is reasonable to conclude that the zoning authorities could prohibit any development if the requirements of that statute were not met. Otherwise the statute would have little purpose. "In construing a statute, common sense must be used and courts will assume that the legislature intended to accomplish a reasonable and rational result." Caltabiano v. Planning and Zoning Commission, 211 Conn. 662, 667 (1989).
II. ELIMINATION OF GARDEN APARTMENT DISTRICTS
In 1983 the Andover Zoning regulations were revised. (Exhibit 27). That revision eliminated Section 5.8 thereby removing references to "Garden Apartment Districts". Since CT Page 5822 1983 there has been no provision for such a zone and "garden apartments" are not a permitted use within any zone in Andover. (Exhibit 23). The plaintiff contends that this action leaves the property in question in limbo or unzoned since its designation as a Garden Apartment District was never changed. He claims that he is thereby deprived of any reasonable use of his property — in effect an unlawful taking.
The issue before this Court is the review of the ZBA decision which was based on the provisions of Sec. 8-26c — an expired subdivision plan. The zoning of this property is the result of action taken by the Planning and Zoning Commission. If the plaintiff is dissatisfied with the action of the Planning and Zoning Commission, he should go to that body. The record does not show that he has been finally deprived of the reasonable and proper use of his property. Vartelas v. Water Resources Commission, 146 Conn. 650, 658 (1959). If the plaintiff is unable to proceed with his proposed development due to non-compliance with Sec. 8-26c, it would seem that he might consider requesting a change of zone with the Planning and Zoning Commission, especially in view of the zoning changes made during the intervening years.
 III. ABILITY OF PROPERTY TO SUPPORT MULTIPLE FAMILY DWELLINGS
The plaintiff contends that the ZBA was without statutory authority, which it has pursuant to Sec. 8-6 of the Conn. Gen. Stats., to consider modifying the subdivision approval granted in 1968. He claims that the ZBA, by requiring compliance with present standards of sewerage treatment and inland wetlands regulations, is somehow reversing the decision of the Planning and Zoning Commission in 1968 when it approved the subdivision plan.
The narrow issue before the ZBA was to review the Building Inspector's refusal to issue a building permit. He had refused to issue a Building Permit in part because the project fell within the definition of a "community sewerage systems" as defined in Conn. Gen. Stat. Sec. 7-245, which in turn required review and approvals per Sec. 7-246 and Sec.22a-430 (Exhibit 3).
The Building Inspector has the duty to insure compliance with zoning regulations, (Exhibit 23, Sec. 21.4), which includes concerns of health, safety and welfare. (Exhibit 23, Sec. 1.1). Those duties include enforcing the provisions of Sec. 7-246f and 22a-430 which regulate community sewerage systems. CT Page 5823
Since 1986, the State of Connecticut has promulgated statutes designated to protect Inland Wetlands and Watercourses, Conn. Gen. Stat. Sec. 22a-36 et seq. These statutes do provide a limited "grandfathering" of projects approved prior to wetlands regulations. Conn. Gen. Stat. Sec. 22a-40(a)(2) provides that:
 A residential home — on a subdivision lot, provided [a building] permit has been issued or the subdivision has been approved by a municipal planning and zoning commission as of the effective date of promulgation of the municipal regulations pursuant to subsection (b) of Section 22a-42a or as of July, 1974, whichever is earlier, [shall be permitted in wetlands and watercourses, as of right], and further provided no residential home shall be permitted as of right pursuant to this subdivision unless the permit was obtained on or before July 1, 1987.
This statutory exception does not apply to multi-unit apartment buildings as are involved in this case.
The statutes applicable to regulation of community sewerage systems, (Conn. Gen. Stat. Sec. 7-245, et seq.), do not contain any "grandfather" provisions, and with the ongoing changes in technology and environmental matters it would not be reasonable to expect such significant health, welfare and concerns to be beyond continuing oversight of the appropriate authorities.
Further, since this plan has expired pursuant to the provisions of Sec. 8-26c, the plaintiff can no longer claim the current statutes and zoning regulations are not applicable to the development of this parcel.
The propriety of the ZBA's review and decision on this issue is supported by both the law and the record in this case.
IV. POST-HEARING COMMUNICATION
The plaintiff claims that the ZBA participated in a private post-hearing communication with the First Selectman and took additional evidence from the Town Attorney without affording the plaintiff the opportunity to rebut. (Exhibit 15).
There was no evidence presented as to any communication between the First Selectman and the ZBA. The mere allegation CT Page 5824 of such is insufficient. This claim is simply unsubstantiated.
The legal advice received from the Town Attorney is not evidence. It is an interpretation of the evidence presented and contains no new information. Surely the ZBA is entitled to consult with its attorney.
For the foregoing reasons, the Court does not find the ZBA acted unreasonably, arbitrarily or illegally, Schwartz v. Planning and Zoning Commission, 208 Conn. 146 (1988) and dismisses the appeal.
HON. LAWRENCE KLACZAK, J. Superior Court Judge