[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum of Decision
This is an action seeking damages and a permanent injunction restraining the City of Hartford from closing or denying vehicular access to Pratt Street to the plaintiffs, their tenants and customer. The amended complaint dated March 10, 1993 contains three counts, the first count claiming that the regulations closing Pratt Street to vehicular traffic during certain hours were illegal; the second count claiming an obstruction of plaintiffs' easement and the third count claiming that the obstruction of plaintiffs' easement was a taking without compensation in violation of the state and federal constitutions.
This court heard the parties on March 21, 22 and 29, 1991 with post-trial briefs being filed through May 3, 1995.
The land comprising Pratt Street was conveyed to the City of Hartford in 1814 in a deed providing that the land was to be used as "a road and for no other purpose." By a city traffic regulation dated October 15, 1990 as amended on May 1, 1992, Pratt Street was closed to vehicular traffic between the hours of 11:30 a.m. and 2:30 p. m. in order that it could be used as a pedestrian mall.
Plaintiff is the owner of two multi-story office buildings located at 57 and 75 Pratt Street respectively which consist of space leased or made available for leasing to commercial, retail and office tenants.
Plaintiffs claim that as a result of the regulation closing Pratt Street to vehicular traffic three hours daily they have suffered and continue to suffer damages because they have lost tenants and rental income and the value of their properties has been impaired because tenants are deprived of vehicular access by customers and suppliers to the premises during the hours of closing.
The plaintiffs when first filing this action sought a temporary injunction to prevent the City from enforcing the regulation which was denied in a memorandum of decision by CT Page 10566 Judge Freed dated July 24, 1992 or the ground that the term "road" as used in the deed of conveyance did not necessarily require access by vehicular traffic [7 Conn. L. Rptr. 171 (1992)]. This decision also denied a second ground for the temporary injunction, namely that the regulation was improperly enacted because the City had no statutory authority to prohibit vehicular traffic on its roads.
Plaintiffs now press their claims for a permanent injunction and for damages based on the alleged diminution in the value of their property.
The testimony offered, before this court at trial indicated that the purpose of closing Pratt Street during the hour of 11:30 a.m. to 2:30 p. m. was to establish a pedestrian mall, increase pedestrian safety and maximize its attractiveness to retail business. Plaintiffs offered evidence to show that they were disadvantaged because there are no retail businesses in their buildings; that unlike other buildings on Pratt Street primarily on its north side, they have no rear access to their buildings which enable services to be supplied during the hours of closing. The plaintiff, Samuel Cohen testified that in his opinion the fair market of plaintiffs' two properties had declined from approximately $3 million to $2 million as a result of the partial closing of Pratt Street to vehicular traffic. Several tenants testified that they felt disadvantaged because of the partial street closing and several past tenants testified that their moving from the plaintiffs buildings was caused, in part, by the partial street closing.
In their first count the plaintiffs claim that the traffic regulations were "illegal, invalid and void" because (A) The closing of Pratt Street violated the condition in the grant that expressly conditioned the grant for the purposes of a road" (B) the regulations were not adopted by ordinance as required by C.III, Section 10 of the City Charter and (C) the closing of Pratt Street was primarily intended to promote private rather than public interests.
(A) The restriction "for purposes of a road".
The short answer to this claim is that it was considered by Judge Freed in his Memorandum of Decision dated July 24, 1992 and we adopt the reasoning in that opinion which CT Page 10567 concludes that the term "road" under Connecticut law does not require Pratt Street to be open to vehicular traffic at all times.
(B) The regulations were not properly adopted by ordinance.
Again, we adopt the reasoning of Judge Freed when he ruled in his Memorandum of Decision that the regulations in question were properly adopted and amended under the express authority of General Statutes § 7-148 C(7)B and Chapter V Sec. 7 of the Hartford City Ordinances.
(C) The closing of Pratt Street was primarily intended topromote private rather than public interests.
Plaintiffs have mounted two separate claims which bear on the purpose of closing Pratt Street, arguing that if it was done to promote private rather than public interests the regulations providing for the closing, that is the exercise of the police power for private purpose would be illegal.
The first claim is that the evidence, oral and documentary showed that the closing was initiated primarily to benefit the retail interests on Pratt Street. In its post-trial brief, plaintiffs concede that the original consultant's report recommending the closing of Pratt Street was based on the purpose of reallocating street space to pedestrians and minimizing illegal parking. In neither its pre-trial brief or post-trial brief have plaintiffs cited any authority for the proposition that these concerns made the closing for "private uses" rather than "public uses." The prohibition of vehicular traffic during the hours in question was part of a plan of redevelopment documented in several studies and proposals which had the goals of preserving the historical integrity and ambience of Pratt Street and to maximize its viability as a commercial center by insuring pedestrian safety and improving the business of establishments located there. These studies and plans include "Downtown Hartford, Managing for Change" (August 1980); "An Evaluation of Downtown Retail Development Strategies for the Downtown Council of Hartford" Urban Land Institute (1983); "Downtown Development Plan" (City of Hartford, 1984); "Central Downtown Urban Design Plan, Hartford, Connecticut" (1986) and "Pratt Street Project, Hartford Connecticut" Smithedwards Architects, March 1987. CT Page 10568
These studies amply support our conclusion that the establishment of the pedestrian mall and the restriction of vehicular use fell well within the gambit of "public use."
A second claim on this point centers around the contention in plaintiff's pre-trial brief that on September 15, 1989 the City signed a construction and maintenance agreement with Pratt Street Limited Partners, a consortium of building owners on Pratt Street for a period of fifty years; that this agreement was assigned to Aetna Life Insurance Co. whose private security guards thereafter erected barriers and posted guards to prevent vehicular traffic from entering Pratt Street between the hours of 11:30 a.m. and 2:30 p. m.; and that Aetna has selectively enforced the blockade denying access to plaintiff's tenants and customers but allowing vehicular access on occasion to persons going to portions of Pratt Street occupied by Aetna tenants.
The evidence showed that one occasion in 1993 a van delivering pizzas to premises on the north side of Pratt Street was permitted to enter the closed portion of Pratt Street and on another occasion an emergency truck summoned to attend a possible gas leak on plaintiffs' premises was not permitted to cross the barriers and was required to park on Trumbull Street. However, the evidence failed to demonstrate any consistent pattern in this respect, sufficient to demonstrate any bias or prejudice against any of the property owners, that corrective measures were taken and resource may be had to city of Hartford officials for any complaint of such violations. It is conceded that arrangements for emergency vehicles to enter Pratt Street during the closed hours are regularly made and even a parking accommodation exists for a physically handicapped tenant of an office building on Pratt Street.
In our view, the evidence fails to establish that the private benefits to retail merchants on Pratt Street was such as to bring the closing outside the parameter of "public use" necessary to justify the initiation and maintenance of the regulation.
Plaintiffs claim that they have a private easement of vehicular traffic access to their properties over Pratt Street and (1) the three hour closing unlawfully obstructs this easement and (2) the obstruction of this easement constitutes CT Page 10569 a violation of General Statutes § 13a-55.
General Statutes § 132a-55 provides as follows:
 Sec. 13a-55. Property owners bounding a discontinued or abandoned highway, or a highway any portion of which has been discontinued or abandoned, shall have a right-of-way for all purposes for which a public highway may be now or hereafter used over such discontinued or abandoned highway to the nearest or most accessible highway, provided such right-of-way has not been acquired in conjunction with a limited access highway.
Defendants have admitted that plaintiffs have a private easement of travel over Pratt Street to access their properties, but plaintiffs have not proven any substantive interference with their easement or any violation of this statute. Pratt Street has not been discontinued or abandoned within the meaning of this statute. Even if the closing of Pratt Street for three hours a day were to constitute a closing or abandonment, plaintiffs would have to prove that their "right of way for all purposes for which a public highway may now or hereafter be used" was interfered with by the three hour closing.
The heart of plaintiff's claim is that the closing of Pratt Street to vehicular traffic for three hours a day is an unlawful interference with their easement of vehicular access to their properties. We conclude that the three hour closing is more in the nature of a lawful regulation of traffic than a denial of the use of the street for vehicular traffic which would amount to an unlawful taking.
In order for plaintiffs to maintain their claim, their easement in the use of Pratt Street would have to be construed as an easement requiring vehicular access over Pratt Street twenty four hours a day. There is no authority to sustain such an interpretation, because public streets are subject to reasonable regulation by municipal authority.
Ordinarily, a city or other municipality has plenary power to control vehicular traffic on its streets. The regulation of traffic on streets, the elimination of congestion and hazards to life and property and the promotion of safety and convenience of the travelling public CT Page 10570 constitutes, it has been held a vital part of the police power of municipalities. Rhyne Municipal Law, (1957) p. 629.
The power of the City of Hartford to regulate traffic is derived from General Statutes § 7-148c(7)(B)(1) which provides in pertinent part:
 Any municipality shall have the power to do any of the following . . . Regulate and prohibit in a manner not inconsistent with the General Statutes, traffic, the operation of vehicles on streets and highways . . . .
Pratt Street consists of one block running from Trumbull Street on the west to Main Street on the east. It has long been designated a one way street permitting vehicular traffic to run easterly from Trumbull Street. Even during the three hour closing, access is permitted to emergency vehicles and vehicular traffic runs unimpeded at all times on Trumbull Street and Main Street. Under all these conditions, there is not such a substantial interference with vehicular traffic on Pratt Street so as to constitute an unlawful interference with any easement that plaintiffs have in the use of Pratt Street.
Plaintiffs claim that the closing of Pratt Street to vehicular traffic for three hours daily is a taking without compensation in violation of the state and federal constitutions
In Vartelas v. Water Resources Commission, 146 Conn. 650
(1959) our Supreme Court drew the distinction between the regulation of land uses under the police power and eminent domain by which the government acquires property interests to create a public benefit.
"The police power regulates use of property because uncontrolled use would be harmful to the public interest. Eminent domain on the other hand takes private property because it is useful the public."
"Whether the exercise of one or the other of these great powers of government is required depends on the circumstances of the particular case." id p. 754. CT Page 10571
In Vartelas the court concluded that there was nothing in the record to support the claim of the plaintiff that he had been unconstitutionally deprived of the use of the property in his control. Similarly, we find that plaintiffs in the present case have not been unconstitutionally deprived of the use of their properties by reason of the traffic regulations closing Pratt Street for three hours per day.
No out of state authority has been called to our attention holding that the closing of a street to vehicular traffic for a short time daily in connection with the establishment of a pedestrian mall amounts to the taking of an abutting landowners property so as to require an eminent domain proceeding.
City of Boulder v. Kahns Inc., Colo. 543 P.2d 711
involved the establishment of a pedestrian mall in Boulder, Colorado under a local ordinance pursuant to a General Statute, the ordinance providing that certain streets could be closed for vehicular traffic except for emergency vehicles and vehicles making deliveries prior to 10:00 a.m and after 4:00 p. m. Certain abutting owners filed claims for damages and the City denied all claims from which denial the abutting owners appealed. The court held that since closing of the streets for certain hours was a valid excuse of the police power no compensation was required. The language of the decision of the Supreme Court of Colorado is instructive.
"The fact that a municipality may under its police power interfere to a certain extent with access to and from premises does not mean necessarily that such interference constitutes a taking for which under the Fifth and Fourteenth Amendments to the United States Constitution and under Colo. Const. Art II, Secs. 15 and 25 there must be compensation. Rather to constitute such a taking there must be an unreasonable or substantial deprivation of access . . . . id p. 714.
The decision goes on to hold that the trial court was correct in concluding that the mall did not create unreasonable restrictions upon pedestrian access or that delivery services were unreasonably or substantially restricted by the mall.
Connecticut does not have a specific enabling act authorizing the establishment of a pedestrian mall but the CT Page 10572 establishment of such a mall appears to be well within the legitimate exercise of the police power.
Plaintiffs have not sustained their burden of proving that they have suffered-damages as a result of the regulations restricting vehicular traffic three hours daily. The estimate of reduced property value and the loss of tenants claimed by the plaintiffs was not proven to be caused by the three hour closing rather than the general decline and attraction of downtown properties in Hartford because of prevailing economic conditions and the particular needs of certain tenants.
Application for permanent injunction is denied and Judgment is entered for the Defendant.