[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION 
CT Page 16111
The plaintiffs, Evandro S. Santini and Santini Homes, Inc. (hereinafter "Santini") seek damages from the State of Connecticut under a theory of inverse condemnation without just compensation in violation of article first §11[1] of the Connecticut Constitution. Santini alleges that certain actions of employees of the Connecticut Department of Environmental Protection ("DEP") and the State Office of Policy and Management ("OPM") resulted in a temporary taking of his property.
The town of Ellington and the Water Pollution Control Authority of the town of Ellington (WPCA) were also named as defendants, however the complaint has been withdrawn as to them leaving only the State of Connecticut as a defendant.
Earlier the State of Connecticut "State" moved to dismiss the count against it for lack of subject matter jurisdiction on the grounds that Santini failed to allege, and/or failed to prove at an evidentiary hearing held on its Motion to Dismiss, a taking under the law. This Court found, based on the evidence presented at that hearing, the plaintiff had, for the purposes of the motion, established an inverse condemnation and denied the Motion to Dismiss. There was not a final decision on the merits rendered at that time.
Subsequently the matter proceeded to a full trial with additional witnesses and testimony. Based now on the totality of the evidence presented at the trial the Court is compelled to conclude that the plaintiff has not met his burden of proving an inverse condemnation occurred.
It should be noted that this case involves a claim that two parcels of land owned by Santini which were located in a sewer district when purchased by Santini, were removed from the sewer district in 1991, a 20 acre tract on Abbott Road and a 54 acre tract on Pinney Street. Accordingly, the plaintiff originally claimed that was a permanent taking. However, in May 1999, the DEP issued a finding of "no significant impact" to the environment and the plaintiff's properties were put back into the sewer district. Therefore the claim has been converted from a claim of a permanent taking to one for a temporary taking from 1993 to CT Page 16112 1999. (Santini claims that the state definitively acted to deny reinstatement of the properties in 1993).
The plaintiff has alleged that the State did not substantially advance a legitimate state interest by asserting (in 1993) that the two parcels of land owned by him could not be returned to the sewer district once they were removed from the district by the WPCA in 1991.
In 1987 DEP ordered the town of Vernon to upgrade its waste water treatment plant. The town of Ellington sends its sewer waste to the Vernon plant for treatment. As part of the long range planning for the Vernon treatment plant the town of Ellington was required to update its Facilities Plan. After an engineering study and a public hearing the Ellington Facilities Plan was modified to delete approximately 758 acres from the previous sewer district. This deletion included about 43 acres of Santini's 54 acre parcel on Pinney Street (approximately 10 acres which was zoned for multi-family housing was not deleted from the district) and his entire 20 acre subdivision on Abbott Road known as Ellridge Estates.
It is clear that the State has a legitimate state interest in controlling waste water treatment and disposal, to provide for clean water in its rivers, streams and sources of drinking water.
The State (DEP) did not target Santini's properties for removal from the sewer district, but acting pursuant to statutory and regulatory authority, sought to have a long term plan for the Vernon Wastewater Treatment Plant. It's actions were consistent with the requirement of the Connecticut Environmental Policy Act (CEPA) § 22a-1 through §22a-1h and the State Plan of Conservation and Development (C D Plan) § 16a-24 through § 16a-33.
It was the WPCA, not the State, which removed Santini's properties from the sewer district. While the DEP cautioned the town of Ellington that it could lose substantial funding if it restored Santini's properties into the sewer district in violation of the Ellington Facilities Plan which had been through the required approval process, that cautionary warning was legally correct.
There were, however, procedures available to Santini for relief. Connecticut General Statutes § 16-32(b) and OPM regulations adopted pursuant to Connecticut General Statutes § 16a-33 provided for an interim change in the Policies Plan. There was also a procedure for reconsideration of the WPCA's re-districting decision by reapplying and demonstrating a hardship by the applicant. Unfortunately Santini did not take these steps until 1998. In the intervening years he sought relief by CT Page 16113 informal meetings with various governmental officials including the governor's office and involved state agencies. These informal efforts resulted in memos and letters primarily from the DEP, explaining its position, and the reasons for its actions, but the state did not foreclose Santini from taking those options available to him. (There was apparently some confusion between DEP and the Department of Agriculture for a time as to the designation of the property in question as prime agricultural farm land, but that was resolved between the two agencies and ultimately did not affect the process).
It was not until February 1998 that the town of Ellington, in a letter to DEP, requested a change in the State Plan of Conservation and Development reclassifying the plaintiff's properties. That request then went to the legislature (as required) for consideration and the legislature approved the Ellington modification to its Facilities Plan, which then brought Santini's two tracts back within the sewer district except for a 200-foot strip along the northerly property line of the Pinney Street tract (which remained classified as a conservation area within the State Plan of Conservation and Development). Apparently the action by the town of Ellington was part of the settlement negotiated between the town of Ellington and Santini. The case against the town of Ellington was then withdrawn in September 1998.
The Court concludes the state acted to substantially advance a legitimate state interest in the first instance, and that it fairly considered Santini's request to reinstate his properties once the request to do so was properly before it.
Nor has the plaintiff demonstrated he has been deprived of reasonable alternative uses for either property, or that any diminution in value resulted in a confiscatory taking due to any state action. Ellridge Estates can readily be completely developed with septic systems in accordance with the approved subdivision-plans. The fact that Santini installed a capped sewer line with the expectation that he might eventually hook up to sewers does not affect this finding. Vartelas v.WRC, 146 Conn. 650, 658 (1959).
As for the Pinney Street tract, while a subdivision plan has never been submitted for approval, the evidence clearly shows it is an easily developable property with or without sewers.
Accordingly, the Court concludes there was not an unconstitutional taking of either parcel by the State of Connecticut.
The Court now turns to a consideration of the 200 foot buffer zone which the legislature mandated as a condition of permitting the amendment CT Page 16114 to the town of Ellington's Facilities Plan. (The plaintiff has amended his complaint to claim this to be a permanent taking). The plaintiff concedes he cannot determine with reasonable probability the diminution in value resulting from this action, and seeks nominal damages and attorney's fees. He claims this requirement of a buffer strip along the northern property line is not based on any reasonable need for separation. The land to the north of Santini's 54 acre tract is farmland known as the "Culbro Farm" and its owner has sold the development rights to it to the State.
The case law requires the State to have the burden of proving the action involves a legitimate governmental concern, that there be a logical and reasonable connection between the government action and the interest it is protecting, and that there be a rough proportionality between the action and the impact of the proposed use.
The simple answer is that the State did not impose a confiscatory restriction on the 200' strip. That land was already classified as a conservation area. The State broadened the definition to place that entire 54 acre tract (except for the 200') into a sewer district. The establishment of a conservation zone is clearly a legitimate governmental concern, and there is a proportionality between the action and the impact. Indeed, there may well be no impact as the plaintiff's engineer testified the proposed subdivision, with slight reconfiguration, would allow home construction on most, if not all, of the proposed lots. (If in fact the plaintiff does submit his present proposed subdivision plan for approval, and further assuming it is approved as submitted).
Therefore, the Court concludes there was not an inverse condemnation, nor a taking of the 200' so called "buffer" zone.
Although the Court does not find a taking by the State, because of the likelihood of appellate review the Court will address the issue of damages, in the event that they were to be awarded.
Considerable testimony and documentary evidence was presented on the issue of damages. The plaintiff wants the Court to accept the methodology utilized by Edward Heberger, which is an income capitalization or subdivision development approach to determine the amount of compensation, assuming a taking is found. In addition, he seeks to recover mortgage interest, real estate taxes and attorney's fees. Ordinarily compensation for a taking is by a determination of fair market values before and after the taking. While an exception may be made in appropriate cases, the Court does not agree this case should fall into that exception. CT Page 16115
Heberger's conclusions are grounded in speculative premises and the Court does not find his methodology to be a reliable indicator. For example, he concludes there was a diminution in value of the Pinney Street tract of $710,000 and a $450,000 diminution for the Ellridge Estates parcel. In 1985 Santini paid $7248 per acre for the 20 acre Ellridge Estates tract or, approximately $145,000. In 1988 he paid approximately $20,000 per acre for the 54 acre Pinney Street property or $1,060,000. His claims for a temporary taking total $2,728,366 using his calculations of loss, after adding claims for taxes and interest. The Court does not believe his claimed loss is tenable.
The same holds true for the testimony of Conrad Kappel who testified as to the claimed losses due to additional taxes and interest. His conclusions are premised on the accuracy of Heberger's evaluations and appraisals. Like Heberger's they are speculative and the Court does not attach persuasive credibility to them.
On the issue of damages, the Court believes the testimony and explanation of the State's appraiser, Arnold Grant, to be more logical and reasonable and his evaluation to be more credible.
With respect to the 20 acre tract, Ellridge Estates, by 1991 Santini had obtained zoning approval for a 16 lot subdivision. All 16 lots were approved for development with on-site septic systems.
Since Ellridge Estates was approved for development with septic systems and was, in fact, being developed, the Court agrees with Grant's assessment that there was no measurable diminution in value for that parcel. The installation of the capped sewer line was completed prior to September 1993 (the time of the alleged taking) and that is not compensable. Further, that was done by agreement between the town of Ellington and Santini without state involvement.
But, in any event, Santini is developing this tract with luxury homes selling for approximately $450,000 each, and the value of the property is not diminished in value after 1993.
As to the Pinney Street tract, assuming there was a taking by the State in 1993, the Court believes there would likely have been some diminution in value. This tract was simply raw land (unlike Ellridge Estates which was being developed) and, while it could have been developed with or without sewers, it had not been subdivided and the testimony established there was likely some diminution in value of a large tract when sewers are not available.
Santini paid $1,060,000 for this tract in 1988, but after the date of CT Page 16116 purchase, the housing market fell and, correspondingly, market conditions were not favorable for tract development in 1993 in Ellington. In addition, this was a site then being considered for a disposal facility for low-level radioactive nuclear waste, which further depressed its value, at least through 1993 after the site was no longer being considered for a nuclear waste facility and the "stigma" period had passed.
As noted, although the Court cannot accept Edward Heberger's (plaintiff's appraiser) diminution in value of $710,000 for this property (assuming a temporary taking), the Court does not fully accept Arnold Grant's (defendant's appraiser) conclusion that the property had a 70 % decline in value between 1988 and 1993 as reasonable. Although the Court is essentially in agreement with Grant's methodology it does not accept his conclusion that, assuming a temporary taking, the loss to Santini was $30,000.
Recognizing that determining damages in a case like this is not an exact science (witness the disparity between the experts), the Court assesses damages, assuming a taking occurred, as follows: Utilizing the purchase price of $20000 per acre as a reasonable approximation of the fair market value, multiplied by the 43 ± acres of the 54 acre tract which was removed from the sewer district, ($860,000), and using a loss percentage of 5 % (as developed by Grant), the diminution in value of the Pinney Street property for the period from 1993 to 1998 would be $43,000.
For the foregoing reasons judgment shall enter for the defendant based on the finding there was not an inverse condemnation.
Klaczak, J.