DANTE J. BRECCIAROLI *v.* COMMISSIONER OF ENVIRONMENTAL PROTECTION

HOUSE, C. J., LOISELLE, MACDONALD, BOGDANSKI and LONGO, Js.

Argued January 14—decision released April 15, 1975

*Frank J. Dumark,* for the appellant (plaintiff).

*Brian E. O'Neill,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellee (defendant).

*Richard O. Brooks* and *Angus Macbeth* filed a brief as amici curiae.

BOGDANSKI, J. This controversy concerns a 20.6-acre parcel of land belonging to the plaintiff and abutting the East River in the town of Guilford. In 1971, 17.5 acres of that land were designated as

tidal wetland[1] by the defendant pursuant to § 22a-30 of the General Statutes. On February 7, 1972, the plaintiff made application to the defendant for a permit to conduct a regulated activity.[2] The application stated that "the land in question has received local approval for a 6 lot industrial subdivision" and that the "proposed work will include placing 4 feet of clean fill on approximately 5.3 acres of land which fall within the bounds of the wetlands." After a public hearing on March 28, 1972, the application was denied.

On appeal to the Court of Common Pleas, the plaintiff alleged that the defendant's denial of his application was improper and arbitrary; that it was not supported by the evidence presented at the hearing; that it was an unreasonable exercise of the police power; and that it amounted to an unconstitutional taking of the plaintiff's land without compensation. While that appeal was pending the plaintiff moved to submit evidence on the issue of whether there had been a taking of his land without compensation. The trial court denied that motion

---

[1] "[W]etland" is defined in § 22a-29 (2) of the General Statutes as "those areas which border on or lie beneath tidal waters, such as, but not limited to banks, bogs, salt marsh, swamps, meadows, flats, or other low lands subject to tidal action, including those areas now or formerly connected to tidal waters, and whose surface is at or below an elevation of one foot above local extreme high water; and upon which may grow or be capable of growing some, but not necessarily all, of the following: . . . [numerous forms of grasses, ferns and other vegetation]."

[2] "[R]egulated activity" is defined in § 22a-29 (3) of the General Statutes as "any of the following: Draining, dredging, excavation, or removal of soil, mud, sand, gravel, aggregate of any kind or rubbish from any wetland or the dumping, filling or depositing thereon of any soil, stones, sand, gravel, mud, aggregate of any kind, rubbish or similar material, either directly or otherwise, and the erection of structures, driving of pilings, or placing of obstructions, whether or not changing the tidal ebb and flow."

on the ground that the facts disclosed in the record certified by the defendant were sufficient for the equitable disposition of the appeal. See General Statutes § 22a-34 (b). Judgment was rendered for the defendant. The plaintiff subsequently moved to open and modify the judgment on similar grounds. From the denial of that motion and from the judgment rendered, the plaintiff has appealed to this court.

The plaintiff has assigned error in the denial of his motion to introduce evidence on the issue of a taking; in the failure of the trial court to set aside the defendant's order or to proceed to award damages pursuant to § 22a-34 of the General Statutes;[3] in the overruling of his claims of law; and in the denial of his motion to open and modify the judgment. The only assignments of error briefed by the plaintiff concern the issue of whether the defendant's denial of the application to fill 5.3 acres of wetland constituted a taking without compensation. All other claims are considered abandoned. *Schwartz* v. *Hamden,* 168 Conn. 8, 20, 357 A.2d 488; *Waldron* v. *Raccio,* 166 Conn. 608, 609, 353 A.2d 770.

This case is the first to come before us concerning Public Acts 1969, No. 695, entitled "An Act Concerning the Preservation of Wetlands and Tidal Marsh and Estuarine Systems," now §§ 22a-28 to

---

[3] Section 22a-34 of the General Statutes provides, in part, as follows: "(a) . . . If the court finds that the action appealed from is an unreasonable exercise of the police power, it may set aside the order. If the court so finds that the action appealed from constitutes the equivalent of a taking without compensation, and the land so regulated otherwise meets the interests and objectives of sections 22a-28 to 22a-35, inclusive, it may at the election of the commissioner (1) set aside the order or (2) proceed under the provisions of sections 48-12 to 48-14, inclusive, to award damages. . . ."

22a-35 of the General Statutes. The legislature has "declared that much of the wetlands of this state has been lost or despoiled by unregulated dredging, dumping, filling and like activities and that the remaining wetlands of this state are all in jeopardy of being lost or despoiled by these and other activities; that such loss or despoliation will adversely affect, if not entirely eliminate, the value of such wetlands as sources of nutrients to finfish, crustacea and shellfish of significant economic value; that such loss or despoliation will destroy such wetlands as habitats for plants and animals of significant economic value and will eliminate or substantially reduce marine commerce, recreation and aesthetic enjoyment; and that such loss or despoliation will, in most cases, disturb the natural ability of tidal wetlands to reduce flood damage and adversely affect the public health and welfare; that such loss or despoliation will substantially reduce the capacity of such wetlands to absorb silt and will thus result in the increasing silting of channels and harbor areas to the detriment of free navigation. Therefore, it is declared to be the public policy of this state to preserve the wetlands and to prevent the despoliation and destruction thereof." General Statutes § 22a-28. That declaration of policy, which has not been challenged by the plaintiff, finds extensive support in recent case law and commentary both with respect to the importance of wetlands as natural resources and with respect to their imminent demise at the hands of man. See, e.g., *Zabel* v. *Tabb,* 430 F.2d 199, 203-4 (5th Cir.); *United States* v. *Lewis,* 355 F. Sup. 1132, 1140 (S.D. Ga.); *State* v. *Johnson,* 265 A.2d 711, 716 (Me.); *Potomac Sand & Gravel Co.* v. *Governor of Maryland,* 266 Md. 358, 371-77, 293 A.2d 241, cert. denied, 409 U.S.

1040, 93 S. Ct. 524, 34 L. Ed. 2d 490; *Commissioner of Natural Resources* v. *S. Volpe & Co.,* 349 Mass. 104, 106-7, 206 N.E.2d 666; Binder, "Taking Versus Reasonable Regulation: A Reappraisal in Light of Regional Planning and Wetlands," 25 U. Fla. L. Rev. 1, 18-30; Porro, "Invisible Boundary— Private and Sovereign Marshland Interests," 3 Natural Resources Lawyer 512, 513; comment, "The Wetlands Statutes: Regulation or Taking?" 5 Conn. L. Rev. 64, 65-67.

Against that laudable state policy must be balanced the interests of the private landowner who wishes to make productive use of his wetland. Article first § 11 of the Connecticut constitution prohibits the taking of private property for public use without just compensation. That same prohibition is found in the fifth amendment to the constitution of the United States. However, " '[g]overnment hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law. As long recognized, some values are enjoyed under an implied limitation and must yield to the police power.' *Pennsylvania Coal Co.* v. *Mahon,* 260 U.S. 393, 413, . . . [43 S. Ct. 158, 67 L. Ed. 322]." *State* v. *Hillman,* 110 Conn. 92, 104, 147 A. 294. Thus the police power may properly regulate the use of property where uncontrolled use would be harmful to the public interest; *Vartelas* v. *Water Resources Commission,* 146 Conn. 650, 654, 153 A.2d 822; and such regulation, even though it prohibits a beneficial use, will not necessarily be deemed a "taking" in the constitutional sense. *Goldblatt* v. *Hempstead,* 369 U.S. 590, 592, 82 S. Ct. 987, 8 L. Ed. 2d 130; *Mugler* v. *Kansas,* 123 U.S. 623, 668-69, 8 S. Ct. 273, 31 L. Ed. 205. "This is not to say, however, that

governmental action in the form of regulation cannot be so onerous as to constitute a taking which constitutionally requires compensation. *Pennsylvania Coal Co.* v. *Mahon,* 260 U.S. 393 . . . [43 S. Ct. 158, 67 L. Ed. 322]; see *United States* v. *Central Eureka Mining Co.,* . . . [357 U.S. 155, 78 S. Ct. 1097, 2 L. Ed. 2d 1228]. There is no set formula to determine where regulation ends and taking begins. Although a comparison of values before and after is relevant, see *Pennsylvania Coal Co.* v. *Mahon, supra,* it is by no means conclusive, see *Hadacheck* v. *Sebastian,*. . . . [239 U.S. 394, 36 S. Ct. 143, 60 L. Ed. 348], where a diminution in value from $800,000 to $60,000 was upheld." *Goldblatt* v. *Hempstead,* supra, 594.

It is true that we have adopted the rule that an ordinance which permanently restricts the use of property for any reasonable purpose goes beyond permissible regulation and amounts to a taking. *Horwitz* v. *Waterford,* 151 Conn. 320, 324, 197 A.2d 636. And where local zoning ordinance amendments resulted in the "practical confiscation" of land, depriving the owners thereof of "any worthwhile rights or benefits" in their land, we have concluded that there was an unconstitutional taking of private land for public use without compensation. *Bartlett* v. *Zoning Commission,* 161 Conn. 24, 31, 282 A.2d 907 (Old Lyme tidal wetlands ordinance prohibiting all uses except wooden walkways, duck blinds, and boating facilities); *Dooley* v. *Town Plan & Zoning Commission,* 151 Conn. 304, 311–12, 197 A.2d 770 (Fairfield flood plain district regulation prohibiting all uses except parks, playgrounds, boating facilities, clubhouses, wildlife sanctuaries, farming and parking, which regulation was applied to land where farming and boating were not possible).

Short of regulation which finally restricts the use of property for any reasonable purpose, resulting in a "practical confiscation," the determination of whether a taking has occurred must be made on the facts of each case with consideration being given not only to the degree of diminution in the value of the land but also to the nature and degree of public harm to be prevented and to the alternatives. available to the landowner. *Horwitz* v. *Waterford,* supra, 323–24; see *Vartelas* v. *Water Resources Commission,* 146 Conn. 650, 654, 153 A.2d 822.

The plaintiff relies on *Bartlett* v. *Zoning Commission,* supra, and *Dooley* v. *Town Plan & Zoning Commission,* supra, to support his claim that the denial of the application for a permit to fill 5.3 acres of wetland resulted in a taking of his land for which compensation must be made. There can be no question that the plaintiff's wetland would have greater value to him if it were filled. It must be presumed, however, that the defendant's denial of the application was based on the standards set forth in § 22a-33 of the General Statutes, which requires the hearing officer to "consider the effect of the proposed work with reference to the public health and welfare, marine fisheries, shell-fisheries, wildlife, the protection of life and property from flood, hurricane and other natural disasters, and the public policy set forth in sections 22a-28 to 22a-35, inclusive."[4] See *Foran* v. *Zoning Board of Appeals,* 158 Conn. 331, 336, 260 A.2d 609. Those standards relate to the prevention or minimization of public harm. The

---

[4] We note that the trial court had the complete record before it of the March 28, 1972 public hearing, including the findings and recommendations of the hearing examiner and the transcript of the hearing. The plaintiff has not chosen to print those findings or any of that evidence in an appendix to his brief. See Practice Book § 645.

Environmental Protection Act of 1971 declared that "there is a public trust in the air, water and other natural resources of the state of Connecticut." General Statutes § 22a-15. The "evils" of unreasonable pollution, impairment or destruction of our natural resources are proper subjects for regulation under the police power. See *Greenwich* v. *Connecticut Transportation Authority,* 166 Conn. 337, 348 A.2d 596; *Potomac Sand & Gravel Co.* v. *Governor,* 266 Md. 358, 373, 293 A.2d 241, cert. denied, 409 U.S. 1040, 93 S. Ct. 524, 34 L. Ed. 2d 490. "The financial effect on a particular owner must be balanced against the health, safety and welfare of the community." *Samp Mortar Lake Co.* v. *Town Plan & Zoning Commission,* 155 Conn. 310, 315, 231 A.2d 649. "Unless there is a clear abuse of discretion . . . which results in an unwarranted discrimination against the property owner or an unreasonable deprivation of his property rights, the welfare of the public, rather than private gain, is a paramount consideration." *Corsino* v. *Grover,* 148 Conn. 299, 311, 170 A.2d 267; see *State* v. *Heller,* 123 Conn. 492, 495–97, 196 A. 337.

The record before us discloses only that a specific application for a permit to fill 5.3 acres of wetland was denied by the defendant. The denial of that application merely prohibited one specific use which presumptively was not reasonable when balanced against the public harm it would create. The plaintiff may still be permitted on subsequent application to fill a lesser portion of his wetland to be used in conjunction with the 3.1 acres of the parcel not classified as wetland; he may make application for a permit or permits to conduct other regulated activities on the wetland; and he may make any reasonable unregulated use of his land consistent with

the laws of the state and the zoning regulations of the town of Guilford. "Until it appears that the plaintiff has been finally deprived . . . of the reasonable and proper use of the property, it cannot be said that there has been an unconstitutional taking of property without just compensation." *Vartelas* v. *Water Resources Commission,* supra, 658.

Thus *Bartlett* v. *Zoning Commission,* supra, and *Dooley* v. *Town Plan & Zoning Commission,* supra, are not controlling under the facts of this case. There has been no "practical confiscation" of the plaintiff's land. Since the trial court could properly conclude on the basis of the record before it that the denial of the plaintiff's application was a proper exercise of the police power, not amounting to an unconstitutional taking without just compensation, there was no error in its denial of the plaintiff's motions to present evidence on the issue of a taking and to open and modify the judgment.

There is no error.

In this opinion the other judges concurred.