[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case involves three appeals, pursuant to Conn. Gen. Stat.22a-43 (rev'd to 1989, as amended), from decisions of the Inland/Wetlands and Conservation Commission of the Town of Washington ["Commission"] denying plaintiff's applications to conduct regulated activities on three lots in CT Page 8216 Washington, Connecticut.
The subject lots are owned by plaintiff, J. M. Scott Associates, Inc., (See Plaintiff's Exhibit A — Warrant Deed to Property), and are located in an approved residential subdivision (Return of Record ["ROR"] #86).[1] The subject lots are referred to as parcel "8" or "F"; parcel "9" or "G"; and parcel "10" or "H" respectively. (ROR #86 at p. 4). They range in size from approximately 3.45 acres to 3.68 acres and are approximately 99%, 76% and 69% wetlands respectively. (ROR #1; #73). Plaintiff filed applications to conduct regulated activities on the subject lots on March 9, 1990, seeking specifically approval to construct a house, accessory apartment, septic system and well on each lot. (ROR #1).
A duly noticed public hearing was commenced on May 16, 1990 and continued to June 20, and July 18, 1990 (ROR nos. 7, 8, 9, 29, 86). The applications for parcels 8F, 9G and 10H were discussed at the sessions along with similar applications made by Raymond J. Lubus, owner of Lots III and 12J in the same subdivision (ROR nos. 7, 8, 9, 86). Alternatives to the proposed development of lots 8F, 9G and 10H were presented and discussed at the public hearings. (ROR nos. 7, 8, 9). The proposed plans which would disturb the least amount of wetlands would impact .56 acre of wetlands on lot 8F; .47 acre of wetlands on lot 9G; and .13 acre of wetlands on lot 10H. (ROR nos. 7, 8, 9). Special meetings were held by the Commission regarding lots 8 through 12 on July 30, August 6 and August 14, 1990. (ROR nos. 10, 11, 12) At the August 14th special meeting, the Commission voted to deny the applications for lots 8F, 9G and 10H. (ROR nos. 12, 13, 33). The Lubus applications were granted on August 14th and are not subjects of this appeal. (ROR nos. 12, 32).
The Commission denied the permits for lots 8F, 9G and 10H because the proposed projects would cause (1) significant permanent loss to the wetlands inventory due to the filling in of portions of the wetland; and (2) negative impacts on the remaining wetlands due to pollution; uncurtailed runoff; flooding and septic discharge. (ROR #32.) The Commission also noted in its memoranda of decision that it could not find that no feasible and prudent alternatives exist. (ROR #32).
Notice of the Commission's August 14th decision was published in the Waterbury Republican-American on August 18, 1990. (ROR #33). Notice of the decision was also sent to plaintiff via certified mail and received by plaintiff on August 20, 1990. (ROR #32). Plaintiff served the instant appeals on the Commission as well as the Commissioner of the Department of Environmental Protection on August 31, 1990. Plaintiff makes the same allegations in its three complaints — that the Commission, in denying the respective permits, acted illegally, arbitrarily and in abuse of its discretion because:
 (1) the Commissions reasons for denial are unclear, vague and insufficient; CT Page 8217
(2) the record does not support the Commission's decision;
 (3) the plaintiff established by competent and expert evidence at the public hearings that no feasible and prudent alternatives existed to its proposed plans;
 (4) in acting on plaintiff's applications, the Commission considered matters which were not within the jurisdiction granted to it under law.
In addition, plaintiff alleges in all three appeals that the Commission's action deprives plaintiff of the use of a substantial portion of its property, without compensation, in violation of the United States and Connecticut Constitutions. Plaintiff and the Commission have filed briefs in support of their respective positions. Additionally, the Commissioner of Environmental Protection, although not a party to the underlying proceeding, has briefed the takings issue.
Although the three subject lots are contiguous and have a common owner, plaintiff has treated them as three separate lots by applying for separate permits, resisting any combination of lots and taking three separate appeals. (ROR, nos. 1, 7, 8, 9, 86; Transcript of Hearing on Instant Appeals before Superior Court). The Commission, however, dealt with the three applications simultaneously. (ROR nos. 7, 8, 9, 86). On October 29, 1990, the court (Dranginis, J.) granted the Commission's motions to consolidate the three appeals.
On October 31, 1990, the Commission filed a revised special defense which asserts that the subject subdivision was approved on June 6, 1970 and has lapsed by operation of Conn. Gen. Stat. 8-26c. However, the Commission explicitly withdrew that special defense at the May 6, 1991 hearing before the superior court.
JURISDICTIONAL REQUIREMENTS
The procedures for an appeal commenced under Conn. Gen. Stat.22a-43 are governed by Conn. Gen. Stat. 4-183, the Uniform Administrative Procedure Act, Conn. Gen. Stat. 22a-43. Strict compliance with the statutory provisions by which the right to appeal is created is required. Basilicato v. Department of Public Utility Control, 197 Conn. 320, 322 (1985).
A. Aggrievement.
Before reaching the merits of the appeal, the court must determine the issue of aggrievement. Huck v. Inland Wetlands Watercourses Agency,203 Conn. 525, 530 (1987). Any person aggrieved by any regulation, order, decision or action made pursuant to sections 22a-36 to 22a-45 . . . may appeal to the superior court. Conn. Gen. Stat. 22a-43, The plaintiff is the owner of the three subject lots and is therefore aggrieved. See Bossert CT Page 8218 Corporation v, Norwalk, 157 Conn. 279, 285 (1968).
B. Timeliness.
The Administrative Procedure Act provides that appeals must be served and filed within forty-five days of the mailing or personal delivery of the final decision of the agency. Conn. Gen. Stat. 4-183 (c). The Commission's decision was sent to plaintiff on August 17, 1990. (ROR #32). The instant appeals were served on the Commission and Commissioner of Environmental Protection on August 31, 1990. They were filed on September 11, 1990. The appeals are therefore timely.
The following standard for judicial review is provided in the Uniform Administrative Procedure Act:
 (j) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings. For purposes of this section, a remand is a final judgment. Conn. Gen. Statute 4-183 (j).
The agency, when granting, denying or limiting any permit for a regulated activity, is required to state upon the record the reason for its decision. Conn. Gen. Stat. 22a-42a(d). On review, the court determines whether the express reasons given for denial are based upon the agency's regulations and whether they are reasonably supported by the record. Huck, 203 Conn. at 540. Where the agency gives several reasons for denying an application, its decision must be sustained if the record discloses evidence that supports any of the reasons given. Gagnon v. Inland Wetlands Watercourses Agency, 213 Conn. 604, 609
(1990); Huck, 203 Conn. at 540.
The court's ultimate duty is to decide whether, in light of the evidence, the agency acted unreasonably, arbitrarily, illegally or in abuse of its discretion. Buckley v. Muzio, 200 Conn. 1, 3 (1986). The court can neither retry the case nor substitute its judgment for that of the agency. New Haven v. Freedom of Information Commission, 205 Conn. 676, CT Page 8219 773 (1988). The trial court is bound by reasonable conclusions of fact made by an administrative agency. Campisi v. Liquor Control Commission, 175 Conn. 295, 296 (1978).
 A
The Commissions authority stems from Conn. Gen. Stat. 22a-36
et seq. and the Inland Wetlands Watercourses Regulations of the Town of Washington ["Regulations"]. The plaintiff argues in its briefs that the Commission exceeded its authority because it sought to impose an outright prohibition on disturbing the wetlands to any degree. Plaintiff argues that Conn. Gen. Stat. 22a-36 enables the Commission to regulate wetlands and watercourses, but does not enable it to seek zero impact on the wetlands.[2] In this regard, plaintiff argues that the Commission had no authority to consider alternatives involving a combination of its three lots and/or building less than one house on each lot. Those alternatives, plaintiff argues, are economically unreasonable and would thwart the basic objectives of its planned activity.
The Commission argues, essentially, that its decision is based upon the agency's regulations and reasonably supported by the record. It further argues that it could not issue the permits because feasible and prudent alternatives to plaintiff's proposals exist.
 In carrying out the purposes and policies of sections 22a-36
to 22a-45, inclusive, including matters relating to regulating, licensing and enforcing of the provisions thereof, the commissioner shall take into consideration all relevant facts and circumstances, including but not limited to:
(1) The environmental impact of the proposed action;
(2) The alternatives to the proposed action;
 (3) The relationship between short-term uses of the environment and the maintenance and enhancement of long term productivity;
 (4) Irreversible and irretrievable commitments of resources which would be involved in the proposed activity;
 (5) The character and degree of injury to, or interference with, safety, health or the reasonable use of property which is caused or threatened; and
 (6) The suitability or unsuitability of such activity to the area for which it is proposed.
 (b) In the case of an application which received a public hearing, a permit shall not be issued unless the CT Page 8220 commissioner finds that a feasible and prudent alternative does not exist. In making his finding the commissioner shall consider the facts and circumstances set forth in subsection (a). The finding and the reasons therefor shall be stated on the record.
Conn. Gen. Stat. 22a-41 (rev'd to 1991, as amended). The regulations closely parallel these criteria to be considered by the Commission:
 Before granting, denying, or limiting any permit for a regulated activity, the Commission shall consider all relevant facts and circumstances that may affect inland wetlands and watercourses, including but not limited to:
 (a) All environmental impacts of the proposed action, such as its effects on the natural capacity of inland wetlands and watercourses to support biological life, prevent flooding, supply water, control sediment, facilitate drainage, and promote public health and safety.
 (b) Alternatives to the proposed activity, such as alternative sitings on the subject property that might enhance environmental quality or have a less detrimental effect than the proposed siting, while still attaining the basic objectivies of the activity.
 (c) The relationship between the short-term uses of the environment and the maintenance and enhancement of long-term environmental productivity.
 (d) Potentially irreversible and irretrievable commitments of natural resources.
 (e) How and how much the proposed activity might cause or threaten injury to, or interference with, safety, health, or the reasonable use of property.
 (f) The suitability of such activity in the town and in the neighborhood where the proposed activity would take place.
The Commission's decisions were accompanied by detailed memoranda evidencing careful consideration of the six factors set forth in the regulations and the criteria of the General Statutes. (ROR #32). Based on the opinions of the Connecticut Department of Environmental Protection and the Commission's own engineering and scientific consultant, CT Page 8221 the Commission concluded that plaintiff's proposed activities would have substantial negative impacts on the wetlands from, inter alia, downstream flooding, pollution and septic failure. (ROR nos. 32, 34, 36, 38, 86). Although the contrary has not been briefed by plaintiff, the Commission's decision was based upon its regulations and is reasonably supported by the record. See Huck, 203 Conn. 540-42.
Further the Commission correctly considered alternatives to plaintiff's proposals. See Conn. Gen. Stat. 22a-41 (b). (ROR nos. 7, 8, 9, 32, 86). The Commission could not conclude that reasonable and prudent alternatives to plaintiff's proposals did not exist. (ROR nos. 7, 8, 9, 32, 86). While plaintiff has argued that the Commission acted improperly by seeking zero wetlands impact, plaintiff has cited no case law and research has revealed none in support of that proposition. After finding that reasonable and prudent alternatives existed, the Commission would have acted illegally had it approved the permits, as Conn. Gen. Stat.22a-41 (b) clearly mandates the opposite.
The analysis does not stop here however, because plaintiff has argued that the alternatives considered by the Commission, namely reconfiguration of the lots and/or building less than one house on each lot are not reasonable and prudent. This argument bears directly on plaintiff's taking claims and as discussed in that section.
 B
Although both the fifth amendment to to Constitution of the United States and Article First, 11, of the Constitution of Connecticut require the payment of just compensation for the taking of private property for public use, neither has ever been interpreted to deny the state the power to regulate the uses to which an owner may devote his property. Figarsky v. Historic District Commission, 171 Conn. 198, 206
(1976); see also Brecciaroli v. Commissioner of Environmental Protection,168 Conn. 349, 352-54 (1975).
Against the laudable state policy of preserving the wetlands and preventing their despoliation and destruction, must be balanced the interests of the private landowner who wishes to make productive use of his wetland. Brecciaroli, 168 Conn. at 353-54. Governmental action in the form of regulation cannot be so onerous as to constitute a taking which constitutionally requires compensation, but there is no set formula to determine where regulation ends and taking begins. Id. at 355.
Short of regulation which finally restricts the use of property for any reasonable purpose, resulting in a practical confiscation, the determination of whether a taking has occurred must be made on the facts of each case with consideration being given not only to the degree of diminution in the value of the land but also to the nature and degree of public harm to be presented and the alternatives available to the landowner. Id. at 356. Until it appears that the plaintiff has been finally deprived CT Page 8222 of the reasonable and proper use of the property, it cannot be said that there has been an unconstitutional taking of property without just compensation. Id. at 358; see also Gil v. Inland Wetlands Watercourses Agency, 219 Conn. 404, 415 (1991). To demonstrate the requisite finality, a property owner asserting a regulatory takings claim bears the burden of proving that the relevant government entity will not allow any reasonable alternative use of his property. Gil, 219 Conn. at 415, (emphasis in original); Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 553
(1987). Plaintiff argues that the only ray of hope indicated by the Commission is to build less than one house on each lot; therefore, plaintiff argues, it has been finally deprived of any reasonable and proper use of its three properties.[3]
Based on the foregoing, the Commission's determination that it could not find that no feasible and prudent alternatives existed is supported by the record and plaintiff has failed to show that the Commission's decision effectuates a taking of property without just compensation.
Accordingly, the plaintiff's appeals are dismissed.
SUSCO, J.