[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Tire Salvage, Inc., appeals pursuant to General Statutes 22a-43 and 4-183 from a decision of the defendant, Inland Wetlands Commission of the Town of North Haven (hereinafter "Commission"), granting the plaintiff's application for a permit to conduct a regulated activity, subject to eleven conditions. Pursuant to General Statutes 22a-43 (a), the Commissioner of Environmental Protection (hereinafter "DEP Commissioner") was served with a copy of this appeal and has appeared as a defendant in this action.
The plaintiff is the owner and operator of a tire disposal facility known as The Tire Pond located on approximately forty contiguous acres in the towns of North Haven and Hamden.
Approximately thirty acres of the plaintiff's property is a pond, which was created earlier this century through clay mining operations. The plaintiff's business consists of the recycling and disposal of used tires. The plaintiff receives shipments of used tires from various retailers, municipalities, the state, and the U.S. Postal Service. The plaintiff then separates tires for recycling or resale, removes rims, and disposes of nonrecyclable tires by depositing them in the pond. The plaintiff's offices and buildings, fabrication operations, surface storage and related activities are in Hamden. Activities in North Haven consist of depositing the tires in the pond and closure, "a process whereby the deposited tires are covered with a geotextile fabric, clean fill is placed upon the fabric, and suitable earth and fill material is placed on top so as to move the perimeter of the pond toward its center." Prior to the May 22, 1991 hearing a large backlog of tires awaiting disposal were stored on the perimeters of the pond. CT Page 4035
The plaintiff's complaint recites a history of proceedings before the Commission beginning in 1985. On or about February 15, 1985, the Commission issued to the plaintiff permit number 0058. The permit was renewed on a continual basis through October 25, 1989. At a Commission meeting on October 25, 1989, the Commission voted to renew the permit subject to certain conditions related to the installation of fire breaks. In response to the plaintiff's request, the Commission reconsidered the conditions, and, while reconsidering, renewed the permit on a monthly or bimonthly basis up to and including December 5, 1990.
At a meeting on December 5, 1990 the Commission voted to deny the permit and to grant a modified permit subject to conditions as set forth in a letter dated December 13, 1990, and a "corrected copy" of the letter dated December 21, 1990. The plaintiff appealed the December, 1990 decisions to the Superior Court (Docket No. CV-91-0311243-S) but later withdrew its appeal with the court's approval, Downey, J., on July 23, 1991 because the issues raised in the appeal "were rendered moot by the decision which is the subject of this appeal."
By application from dated April 3, 1991, the plaintiff applied for a permit to conduct a regulated activity. After a public hearing on May 22, 1991 and a Commission meeting on June 26, 1991, which was continued to July 2, 1991, the Commission voted to approve the plaintiff's application subject to eleven conditions. The plaintiff was notified of the Commission's decision by letter dated July 12, 1991, sent by certified mail. This appeal challenging three of the conditions of the Commission's approval of the plaintiff's permit application followed.
General Statutes 22a-43 (a) provides that "any person aggrieved by any . . . decision made pursuant to actions 22a-36 to22a-45, inclusive, by the . . . municipality or any person owing or occupying land which abuts any portion of land or is within a radius of ninety feet of the wetland or watercourse involved in any . . . decision . . . made pursuant to said sections may appeal to the Superior Court in accordance with the provisions of section4-183 . . . ." Aggrievement is a specific, personal and legal interest in the subject matter of the decision. Huck v. Inland Wetlands 
Watercourses Agency, 203 Conn. 525, 530, 525 A.2d 940 (1987). An owner of the subject property is aggrieved and is entitled to take an appeal. Huck v. Inland Wetlands Watercourses Agency, supra; see Bossert Corp. v. Norwalk, 157 Conn. 279, 285, 253 A.2d 39
(1968).
The plaintiff in this case is the applicant for the permit to conduct regulated activity. The plaintiff has alleged in its complaint that it is the owner of the property upon which it seeks CT Page 4036 to conduct the regulated activity which is the subject of the permit application. The plaintiff is the owner of the subject property and the permit applicant and, therefore, that it is an "aggrieved person" entitled to bring this appeal.
In granting, denying or limiting any permit for a regulated activity the inland wetlands agency considers the factors set forth in section 22a-41. General Statutes 22a-42a(d). General Statutes 22a-41 provides:
 (a) in carrying out the purposes and policies of sections 22a-36 to 22a-45, inclusive, including matters relating to regulating, licensing and enforcing of the provisions thereof, the commission shall take into consideration all relevant facts and circumstances, including, but not limited to:
 (1) The environmental impact of the proposed action;
(2) The alternatives to the proposed action;
 (3) The relationship between short-term uses of the environment and the maintenance and enhancement of long-term productivity;
 (4) Irreversible and irretrievable commitments of resources which would be involved in the proposed activity;
 (5) The character and degree of injury to, or interference with, safety, health or the reasonable use of property which is caused or threatened; and
 (6) The suitability or unsuitability of such activity to the area for which it is proposed.
 (b) In the case of an application which received a public hearing, a permit shall not be issued unless the commissioner finds that a feasible and prudent alternative does not exist. In making his finding the commissioner shall consider the facts and circumstances set forth in subsection (a). The finding and the reasons therefor shall be stated on the record.
(See also ROR Item 14, Regulations for the Protection and CT Page 4037 Preservation of the Inland Wetlands and Watercourses of the Town of North Haven, Connecticut (hereinafter "Wetlands Regulations"), section 6.1, pp. 11-12). "In granting a permit the inland wetlands agency may grant the application as filed or grant it upon such terms, conditions, limitations or modifications of the regulated activity, designed to carry out the policy of sections22a-36 to 22a-45, inclusive." General Statute 22a-42a(d). The court does not redetermine factual issues or weigh the credibility of witnesses, as those matters are within the exclusive province of the agency. Kaesar v. Conservation Commission, supra; see Huck v. Inland Wetlands Watercourses Agency, supra, 540-42. The court is limited to a review of the evidence and reasoning the agency, has placed on the record. Kaesar v. Conservation Commission, supra; see Huck v. Inland Wetlands Watercourses Agency, supra; 540-42. The court is limited to a review of the evidence and reasoning the agency has placed on the record. Kaesar v. Conservation Commission, supra.
The agency's decision must be sustained if an examination of the record discloses evidence that supports any of the reasons given for the decision. Huck v. Inland Wetlands Watercourses Agency, supra 539-40. The evidence to support any such reason must be substantial. Id., 540. Where an inland wetlands commission does not state on the record the reasons for its decision, the trial court, in an appeal from the commission's decision, must search the record of the hearings before that commission to determine if there is an adequate basis for its decision. Gagon v. Inland Wetlands Watercourses Commission,213 Conn. 604, 611, 569 A.2d 1094 (1990); see Kaesar v. Conservation Commission, supra, 312. The plaintiff has the burden of proof in challenging the administrative action. Red Hill Coalition, Inc. v. Conservation Commission, 212 Conn. 710, 718, 563 A.2d 1339
(1989).
The plaintiff alleges in its complaint that by imposing three of the eleven conditions (Conditions 3, 6 and 9) of the Commission's approval of the plaintiff's permit application, the Commission "acted illegally, arbitrarily, in abuse of its discretion and in violation of the Plaintiff's statutory and constitutional rights." (Complaint, para. 16). The plaintiff further alleges that "such action constitutes the equivalent of a taking without compensation." (Complaint, para. 16).
The plaintiff contends that although the Commission does not purport to deny the application, the conditions imposed in the approval amount to a denial because the Commission has fashioned such conditions in a manner that makes it virtually impossible for the plaintiff to comply with them. The plaintiff claims that the objectionable conditions are especially so because the plaintiff has operated under the prior permit without adverse impact on the CT Page 4038 environment, and the plaintiff is doing nothing differently now than it did when the original permit number 0058 was issued and renewed.
At the outset of this discussion of the merits of the plaintiff's appeal, it should be noted that at the hearing before this court, the plaintiff argued that the Commission's references, in its brief and at the hearing, to earlier Commission meetings on previous permits issued to the plaintiff were inappropriate and that there is no evidence in the transcript of the Commission hearing on this permit application which supports the imposition of the three conditions that the plaintiff is challenging by way of this appeal. However, the appeal file contains no indication that the plaintiff, up to the time of the hearing before this court, objected in any way to the inclusion of the transcripts and documents from earlier permit proceedings in the record of this appeal. The plaintiff's complaint recites the history of the plaintiff's previous permit applications and proceedings before the Commission and makes specific references to the earlier permits and Commission hearings. Therefore, the inclusion in the record of evidence relating to earlier proceedings, to the extent that it relates to this case, is proper, and is not beyond the scope of this appeal. Cf. General Statutes 4-177 (d) (record shall include transcript of "proceedings relating to the case").
It should also be noted that in this case, the Commission did not state on the record the reasons for its decision. It is therefore submitted that the court must search the record to determine if there is an adequate basis for the Commission's decision. See Gagnon v. Inland Wetlands Watercourses Commission, supra.
The third condition imposed upon the plaintiff, as set forth in the July 12, 1991 letter from the Commission to the plaintiff, states:
 That the applicant effect the existing closure plan with the Department of Environmental Protection except that the applicant SHALL NOT DEPOSIT ANY ADDITIONAL TIRES OR PARTS THEREOF for permanent disposal, more than 5 feet above the level of the surface of the pond.
(ROR Item 24).
The plaintiff argues that while it does not object to that portion of the third condition which requires the plaintiff to ". . effect the existing Closure Plan with the [DEP] . . .," the plaintiff claims that the further requirement that "the applicant SHALL NOT DEPOSIT ANY ADDITIONAL TIRES OR PARTS THEREOF for CT Page 4039 permanent disposal, more than 5 feet above the level of the surface of the pond," is directly contradictory to a requirement of the DEP Commissioner. The plaintiff asserts that while municipalities are allowed, even required, to regulate activities affecting wetlands and watercourses, such municipal regulation "does not include the contradiction of the Orders and Requirements of the Defendant [Commissioner] of the [Department of] Environmental Protection. . . ." The plaintiff argues that the third condition is illegal and arbitrary because "where the requirements of the . . . [Commission] conflicts [sic] with the requirements of the . . . [DEP Commissioner], the former must yield." Plaintiff's brief, p. 9).
The defendant Commission argues that the DEP requirement was not before the Commission at any time prior to the Commission's decision to approve the plaintiff's application, nor is it part of the record before this court. The Commission further argues that there is no conflict in this case between the local action and the DEP requirement. The Commission claims that, "assuming that there is a DEP permit authorizing the closure of the tire pond, the Commission's requirement that the height of the exposed tires be no higher than five (5) feet does not attempt to forbid that which the state concern allegedly authorizes. . . . It does not prevent the plaintiff from closing the pond." (Commission's brief, p. 13).
The defendant DEP Commissioner argues that the plaintiff has not advanced a basis in law for the assertion of a preemption argument. The DEP Commissioner contends that the argument that the plaintiff advances cannot be characterized as preemption, since the legislature has made explicit its determination not to occupy the entire field of wetlands and watercourses protection. The DEP Commissioner further asserts that a local regulation may provide higher standards than a statute without being inconsistent with the statutory scheme. The DEP Commissioner maintains that "the action of the defendant commission can be viewed as an attempt only to enlarge upon the particular aspect of its approval complained of," and "the fact that another permit requires less of the plaintiff is of no moment in respect to this legal issue." (DEP Commissioner's brief, pp. 4-5).
The original permit 0058 issued by the Commission provided that "a closure plan with grading and seeding be submitted to the commission and be in compliance with the revised closure plan submitted to the Commissioner of the Department of Environmental Protection on June 25, 1981." Permit number 0058 further provided that "the compacted fill be at elevation 12 with the intent of having the tires to elevation 10 with two (2) feet of berm. The final closure would be sloped to allow for drainage with an elevation of fourteen (14) feet at the center of the crown." (ROR Item 1, p. 2; Item 11, p. 7, testimony of Bruce Eber, president of CT Page 4040 Tire Salvage, Inc.).
At the November 19, 1990, special workshop conducted by the Commission to "resolve some problems that exist with the Tire Pond. . .," the requirements of various state and Commission permits were discussed. (ROR Item 11). At that meeting, Tom Pregman, a representative from the DEP Solid Waste Management Bureau, stated that "[t]here are a number of permits that are required from the State. One was issued in 1981 by the Water Program for discharge permit to put tires into the pond. That permit was renewed in 1986 and expires every five years. . . . The permits that are required from the State. One was issued in 1981 by the Water Program for discharge permit to put tires into the pond. That permit was renewed in 1986 and expires every five years. . . . The permit is based upon a site plan to put the tires in the pond basically to the elevation of the water." (ROR Item 11, p. 4). After this statement, the following discussion took place:
 Commissioner Bialecki — When you say the elevation of the water that means they can't be above the water that means they can't be above the water level?
 Mr. Pregman — Tires should go to the elevation of the water and stay submerged and then there is suppose [sic] to the some soils applied, wetlands vegetation established. The reading of their plan is to stay below the elevation of their dike.
 Commissioner Bialecki — Mr. Eber has stated the tires can be 14' above water level.
 Mr. Joseph Farricelli of Tire Salvage, Inc. — As I understand the permit I believe we're suppose [sic] to have an elevation of 12' around the pond.
 Mr. Pregman — An elevation of 12' is one foot above flood stage.
 Commissioner Bialecki — That doesn't mean he can keep tires 12'.
Mr. Pregman — No.
 Mr. Farricelli — It is not correct that the State of Ct. does not like [to] have a bowl but rather have the water drain. So if it's [sic] 12' at the very least you have to be 13' CT Page 4041 above the water with some kind of soil so the elevation will drain.
 Mr. Pregman — That is not the case because you're talking about placing materials in the water as opposed to staying above the water level. It does state in the plan to be reestablished.
(ROR Item 11, pp. 4-5).
At the hearing before the Commission on May 22, 1991, the plaintiff's attorney, John Parese, stated that "to the extent that you want to see copies of what we give to the other administrative agencies in the state you're entitled to it, you got it. A copy of the final closure plan once again, that has already been submitted." (ROR Item 33, p. 65). Attorney Parese subsequently stated:
 Frankly it is our belief that the pond is usable for many, many years to come. When it gets to the point where that pond can no longer accept tires then phase 2 or 3 or 4 of the closure plan will be implemented. And, you know, at that point we'll be before you with another request. So — yeah, Mr. Farricelli, reminded me that the closure plan that we're referring to now is not the one that was adopted in 83, which called for piling of ties at an elevation I think 12 or 14 [feet]. Frankly, we agree that's too high to pile the tires, which is one of the reasons why he has a new application, to bring the level of the tires to either at or below the level of the pond and then fill material on top of that and perhaps shredded material and another layer of fill and then seed.
(ROR Item 33, p. 68) (Emphasis added).
The record in this case does not contain any description of the terms of any current closure plan approved by the DEP which may contradict the third condition of the Commission's approval of the plaintiff's permit application. The record, further, reveals no indication of any attempt by the plaintiff to present additional evidence or to supplement the record to include a copy of any DEP approved closure plan or any other state permit or regulatory activity which the plaintiff claims the third condition contradicts. The evidence in the record only includes references to a 1981 closure plan or permit which was renewed in 1986 and which expires every five years and thus would have expired in CT Page 4042 1991, and to the original permit number 0058 issued by the Commission which had allowed a higher tire elevation. The evidence in the record that the plaintiff agreed that the tire elevation allowed by original permit number 0058 was "too high" and that it had a "new application" pending "to bring the level of the tires to either at or below the level of the pond," supports the Commission's decision to lower the allowable level of tires above the surface of the pond.
In the absence of any evidence in the record as to the terms of any existing DEP approved closure plan, there is nothing before this court upon which it could make a determination that the third condition imposed by the commission is inconsistent or contradicts that closure plan or other regulatory scheme of the DEP Commissioner. Accordingly, the plaintiff has not met its burden of proving that the Commission acted illegally or arbitrarily in imposing the third condition limiting the piling of tires to no more than five feet above the level of the surface of the pond on the ground that the condition is inconsistent with regulatory action taken by the DEP Commissioner.
The sixth condition imposed upon the plaintiff requires:
 That exposed tires, on the land, shall not extend more than 25 feet from the edge of the entire pond and be no higher than five (5) feet elevation. Tires may not be stored, within the Town of North Haven, for more than five (5) days after delivery to the site.
(ROR Item 24).
The plaintiff argues that:
 there is little that Plaintiff can do to accelerate the settling process [of the tires in the pond] and until such tires settle so as to form a base upon which the closure materials can be placed, the width of the "Exposed" tires is to a large extent beyond Plaintiff's control. Imposing a new condition which the plaintiff cannot meet is tantamount to a denial which in turn, is the equivalent of a taking without compensation.
(Plaintiff's brief, p. 11).
The Commission argues that the imposition of this condition relates to the Commission's fire hazard concerns. The Commission claims that by limiting the exposed tires on the land to a certain CT Page 4043 distance and height, the Commission lessens the chance of a large, uncontrollable tire fire spreading on the shores of the pond. The commission further argues that the plaintiff's attack on this condition on the ground that it impedes the process of covering tires which are floating in the pond is misguided, because the sixth condition does not address tires in the pond, but instead addresses only "exposed tires on the land."
The DEP Commissioner notes that the record reveals a concern on the part of the Commission for the hazards posed by a possible fire on the site "that would establish a sufficient nexus between the condition and public purposes related to the permit requirement." (DEP Commissioner's brief, p. 7). The DEP Commissioner contends that the plaintiff "points to no portion of the record which would controvert the defendant commission's assertion." (DEP Commissioner's brief, p. 7).
Section 1.3 of the Wetlands Regulations provides in part that:
 The preservation and protection of the wetlands and water courses from random, unnecessary, undesirably [sic] and unregulated uses, disturbance or destruction is in the public interest and is essential to the public health, welfare and safety. It is, therefore, the purpose of these regulations to protect the citizens of North Haven by making provisions for the protection, preservation, maintenance and use of the inland wetlands and water courses by minimizing their disturbance and pollution. . . .
(ROR Item 14, Wetlands Regulations, section 1.3, p. 1). Factors which must be considered by the Commission in making its final decision on a permit application pursuant to the Wetlands Regulations include the environmental impact of the proposed action, the character and degree of injury to, or interference with, safety, health or the reasonable use of property which is caused or threatened, and
 [t]he extent to which the exercise of property rights and the public benefit derived from such use may or may not outweigh or justify the possible degradation of the inland wetland or water course, the interference with the exercise of other property rights, and the impairment or endangerment of the public health, safety or welfare. CT Page 4044
(ROR Item 14, Wetlands Regulations, section 6.1.D(i), (v); section 6.1.H, pp. 11-12).
At the November 19, 1990 workshop and at the May 22, 1991 public hearing, Commission members expressed concern about the large number of tires piled on the pond's perimeter and fears regarding the possibility of a tire fire. At the November workshop, Commissioner Bialecki stated:
 One thing that comes to my mind is a major tire fire similar to the one I heard about over the radio recently in New Jersey. Hundreds of thousands of tires are burning, families have been vacated from their homes and firemen from surrounding communities are trying to put it out. That brings us to tonight's meeting and all the meetings before this and the concern this tire pond has on us. It would be a disaster if this goes up in smoke, who will be responsible? We're trying to prevent that disaster from happening. This Commission has always insisted that all the tires being brought to them should be going into the pond and be below water grade so fire would never happen. For the last year all we have been doing is seeing a million tires surrounding the pond instead of being in the pond. We finally got them to put some fire breaks in and got a few more tires into the pond but God-forbid the disaster ever happens. We insisted they carry at least $10,000,000. liability policy but they claim they can't get it. The main thing we want to do is get the tires into the pond and we haven't been successful. On our last site visit we were saying where are you going to put all those tires on the land? We'd like to know how much room is left in the pond and how many more tires it will be able to take before you put one more tire in there.
(ROR Item 11, p. 4). At the May 22, 1991 public hearing, Commission members also posed questions and commented regarding their concern about the possibility of fire and the large amount of tires piled on the perimeter of the pond. (ROR Item 33, pp. 11-16, 29-30, testimony of Bruce Eber, Commissioners Seekamp and McGarry).
The sixth condition imposed by the Commission limiting both the height and width of the piles of tires on the perimeter of the CT Page 4045 pond addresses the Commission's concerns regarding the large piles of tires on the pond's perimeter and the possibility of tire fires and furthers the purpose of the Wetlands Regulations to protect the public health, safety and welfare by making provisions for protection and preservation of inland wetlands by minimizing their disturbance and pollution. Accordingly, the sixth condition imposed by the Commission is supported by substantial evidence of the reasonable concerns of the Commission and its obligation to consider the purpose of the Wetlands Regulations and the impact of the plaintiff's actions on both the environment and the public health, safety and welfare. Therefore the plaintiff has not met its burden of proving that the Commission acted illegally or arbitrarily in imposing the sixth condition.
The plaintiff has not mentioned in its brief the second part of the sixth condition, which states that tires may not be stored within the Town of North Haven for more than five days after delivery on the site. Accordingly, because it has not briefed the issue, the plaintiff has abandoned any claims that it may have regarding this portion of the sixth condition. See State v. Ramundar, 204 Conn. 4, 16, 526 A.2d 1311 (1987), cert. denied484 U.S. 955, 108 S. CT. 348, 98 L.Ed.2d 374 (1987); DeMilo v. West Haven, 189 Conn. 671, 681-82 n. 8, 458 A.2d 362 (1983).
The ninth condition imposed upon the plaintiff by the Commission requires the plaintiff to "post a performance bond in the amount of $100,000.00, which bond may be passbook or surety, in form acceptable to the Town Attorney." (ROR Item 24). However, the condition contains the following parenthetical statement:
 (The Commission will consider a reduction in the amount of said bond upon a showing by the applicant that said bond is redundant of bonding required by the EPA, DEP, the North Haven Planning Zoning Commission, the Hamden Conservation Commission and/or the Hamden Planning Zoning Commission.[)]
(ROR Item 24).
The plaintiff does not contest the Commission's ability to require a reasonable bond; however, the plaintiff claims that the Commission's decision to increase the bond which had been in effect and under which the plaintiff had operated for more than five years by more than 500 percent is arbitrary and unreasonable. The plaintiff further argues that:
 Prior to October 25, 1989, Plaintiff's total bonding with the Town of North Haven both for closure implementation and testing amounted to CT Page 4046 approximately $20,000.00. There has never been any indication of a need to resort to the bond. . . . As also noted above, closure contemplates the complete filling of the pond with tires in accordance with a plan approved by DEP. To attempt to implement the Closure Plan without filling the pond with tires, if not impossible, is certainly unrealistic. Likewise, to require the Plaintiff to bond for that eventuality (which is apparently what the Defendant Commission has done based upon the amount of the bond) is tantamount to regulating the Plaintiff out of existence.
(Plaintiff's brief, p. 12). The plaintiff contends that the parenthetical provision of condition nine indicating that the Commission would consider a reduction upon a showing of redundancy by the plaintiff, does not address the primary thrust of the plaintiff's concern, "namely, that the $100,000.00 bond itself is unreasonable in the context of the plaintiff's past, current and contemplated conduct of the regulated activity." (Plaintiff's brief, p. 13).
The DEP Commissioner notes that the condition allows for consideration of a reduction in the amount of the bond in light of the bonding requirements of other agencies. The DEP Commissioner contends that the plaintiff's mere assertion, without more, that the bonding condition is unduly burdensome, is insufficient to perfect a taking claim.
Section 12.1 of the Westlands Regulations provides that, "[t]he applicant, upon approval of the license, and at the discretion of the Commission, may be required to file a performance bond in an amount and with sureties and in a form approved by the Commission." (ROR Item 14, Wetlands Regulations, section 12.1, p. 17).
The record reflects that at the November 19, 1990 workshop, Joseph Farricelli, a spokesman for the plaintiff stated:
 We're very concerned about a fire, but for a tire fire to burn someone has to start it. If $10,000,000. of insurance is what this commission wants, we'll do our best to get it. If a Performance Bond is required we'll get that also. In fact, our plan says the full closure, if not done in sequence, could run in the neighborhood of $2.7 million dollars and normally you post 10% of that in cash. We're prepared to do that but we can't post CT Page 4047 $270,000. dollars to the I/W and $270,000. to the Hamden Conservation and $270,000. to North Haven P Z and another $270,000. to Hamden P Z and the D.E.P.
(ROR Item 11, p. 8).
In light of Farricelli's testimony regarding the potential costs of closure and the normal amount posted, the Commission did not act illegally or arbitrarily in raising the amount of the bond required to more adequately reflect the potential costs of closing the pond. It should be noted that the $100,000.00 bond required in the ninth condition is less than five percent of Farricelli's estimate of the cost of closure;, it is less than half of the ten percent amount "normally" posted. (See ROR Item 11, p. 8). The Commission's action was especially reasonable in light of Farricelli's statement that "[w]e're prepared to do that." The parenthetical provision of the ninth condition allowing the plaintiff to seek a reduction if the bond is redundant of other agencies' bond requirements, directly addresses the plaintiff's concern that the plaintiff could not afford to post a ten percent bond as to every agency which may require it. Accordingly, the Commissioner's decision to require a $100,000.00 performance bond is supported by substantial evidence, and that the plaintiff has not met its burden of proving that the Commission acted illegally or arbitrarily in imposing the ninth condition.
The court would call again to the attention of the parties the fact that the Commission volunteered to consider a reduction in the, amount of the bond if there is a redundancy of bonding such as may be required by various agencies' commissions and governmental units (ROR Item 24). This may be the subject of further action by the parties or the court.
The plaintiff claims that the imposition of the three conditions discussed above amounts to a taking without compensation pursuant to General Statutes 22a-43a. (Complaint, paras. 16, 18; Plaintiff's brief, pp. 6-7, 11, 13-15). The plaintiff argues that the conditions are "new and significantly more burdensome," and that the imposition of those conditions amount to a denial of its permit application because the Commission "has fashioned such conditions in a manner that makes it virtually impossible for the Plaintiff to comply." (Plaintiff's brief, pp. 6, 14). The plaintiff claims that it expended large sums of money on buildings, improvements and equipment in reliance on earlier permits issued by the Commission and that now the Commission is "attempting to change the rules in midstream." (Plaintiff's brief, pp. 14-15). CT Page 4048
General Statutes 122a-43a(a) provides:
 If upon appeal pursuant to section 22a-43, the court finds that the action appealed from constitutes the equivalent of a taking without compensation, it shall set aside the action or it may modify the action so that it does not constitute a taking. In both instances the court shall remand the order to the inland wetland agency for action not inconsistent with its decision.
The trial court decides takings claims de novo in the light of all the evidence presented to it, including, but not limited to, the administrative record. Cioffoletti v. Planning Zoning Commission, 209 Conn. 544, 551, 552 A.2d 796 (1989) (Cioffoletti, I); see Gil v. Inland Wetlands Watercourses Agency, 219 Conn. 404,409, 593 A.2d 1368 (1991); In determining whether a taking has occurred, the public interests are to be balanced against those of private landowners. Cioffoletti I., supra, 562. "`Short of regulation which finally restricts the use of property for any reasonable purposes, resulting in a "practical confiscation," the determination of whether a taking has occurred must be made on the facts of each case with consideration being given not only to the degree of diminution in the value of the land but also to the nature and degree of public harm to be prevented and to the alternatives available to the landowner.'" Cioffoletti I., supra, 562-63, quoting Brecciaroli v. Commissioner of Environmental Protection, 168 Conn. 349, 356, 362 A.2d 948 (1975); see also Cioffoletti II, supra, 368. "[E]vidence may be admitted that is material to the taking issue both as it relates to the plaintiffs' financial detriment and as it relates to the advancement of the public interest." Cioffoletti II, supra, quoting Cioffoletti I, supra, 563.
The plaintiff in this case has offered no evidence in support of its taking claim regarding the degree of diminution in the value of its property or other financial detriment suffered by the plaintiff as a result of the imposition of the conditions. While the condition requiring an increase in the amount of the performance bond is an increase in the cost of operating the tire pond, the plaintiff has not offered any evidence as to the degree of economic impact of such an increase on its operation. The record does not contain any evidence regarding the financial impact of the imposition of the three conditions which would outweigh any evidence contained therein of the public interests sought to be protected by the imposition of those conditions, as discussed above in this memorandum. The plaintiff in this case bears the burden of proving that the imposition of the conditions constitutes a taking without compensation. The plaintiff's mere CT Page 4049 allegation in its complaint that the imposition of the conditions constitutes a taking, and statements in its brief that it has "expended money" on buildings, improvements and equipment in reliance on earlier permits and that the conditions are "significantly more burdensome," insufficient to meet that burden of proof.
The record contains no evidence, nor has the plaintiff offered any evidence, which would show that the imposition of these conditions prevents the plaintiff from conducting, o in any way diminishes its ability to conduct, its tire disposal business. Accordingly, the plaintiff has not met its burden of proving that the Commission's decision to approve the plaintiff's permit application subject to conditions 3, 6 and 9 constitutes a taking without compensation.
For all of the foregoing reasons, the plaintiff's appeal is be dismissed.
DONALD W. CELOTTO, JUDGE